JON L. NORDHEM *et al.*, Plaintiffs-Appellees, v. HARRY'S CAFE, INC., *et al.*, Defendants-Appellants.

First District (5th Division) No. 85—3591

Opinion filed September 16, 1988.—Rehearing denied November 2, 1988.

Pedersen & Houpt, of Chicago (George L. Plumb and Arthur M. Holtz-man, of counsel), for appellants.

Beeler, Schad & Diamond, P.C., of Chicago (Stephen B. Diamond, of counsel), for appellees.

JUSTICE PINCHAM delivered the opinion of the court:

Plaintiffs, Jon Nordhem and William Nordhem, were awarded judgments, by confession, against defendants, Harry's Cafe, Inc., and its board of directors. Thereafter, an order was entered granting plaintiffs' motion to confirm the judgments but denying a motion of defendants to open the judgments and for leave to file a proposed counterclaim. On defendants' appeal therefrom, this court found an abuse of discretion in denying leave to file the counterclaim and remanded with instructions to permit its filing. *Nordhem v. Harry's Cafe, Inc.* (1983), 116 Ill. App. 3d 933, 452 N.E.2d 626.

The counterclaim subsequently filed alleged, *inter alia*, that in 1979 plaintiffs opened a booth at a food, beverage and entertainment festival entitled ChicagoFest in the name of Harry's Cafe without the authority of Harry's Cafe and that plaintiffs breached their contract with ChicagoFest, because of which Harry's Cafe was not allowed to participate in ChicagoFest in subsequent years. Following a trial on Harry's Cafe's counterclaim the trial court granted judgment to plaintiffs, Jon and William Nordhem. The trial court concluded, however, that William Nordhem breached his fiduciary duty to Harry's Cafe and assessed damages against the Nordhems in the amount of any net profits earned by the Nordhems at the 1979 ChicagoFest. We affirm.

The sole issue raised on appeal is whether the trial court correctly assessed damages. The facts adduced at trial follow.

Plaintiffs, Jon Nordhem and William Nordhem, were employees and members of the board of directors of the defendant, Harry's Cafe, a combination restaurant and bar in Chicago. In the fall of 1978 the Nordhems, doing business as a partnership entitled The Nordhem Company, applied to the City of Chicago to participate in the 1979 ChicagoFest.

Defendant, Thomas DuBois, the president and a member of the board of directors of Harry's Cafe, testified that at a meeting on August 1, 1979, the board of directors of Harry's Cafe discussed the possibility of operating a booth at the 1979 ChicagoFest. DuBois testified that plaintiff, William Nordhem, advised the board that there was not sufficient time for Harry's Cafe to obtain the approval of the City of Chicago to operate a booth at the 1979 ChicagoFest. The Nordhems further advised the board that the Nordhems were going to operate their own booth at the 1979 ChicagoFest. DuBois informed the board that Harry's Cafe was not to be connected with the Nordhems' booth at the 1979 ChicagoFest. DuBois testified that in 1980 he applied on behalf of Harry's Cafe to participate in the

1980 ChicagoFest and was rejected. DuBois conceded that Harry's Cafe did not apply to participate in ChicagoFest in subsequent years.

Harry's Cafe offered the expert opinion of a certified public accountant, Harvey Gorden, to show that Harry's Cafe would have realized a profit of approximately $73,000 if it had participated in ChicagoFest from 1979 through 1982. Gorden testified that he estimated the costs of operating a booth at ChicagoFest by using factors which were consistent with a "well-operated restaurant." Gorden further testified that his opinion was also based on an analysis of a sample of 19 of the 59 vendors who participated in ChicagoFest from 1979 through 1982. On cross-examination, however, Gorden conceded that he did not know what products these 19 vendors sold and that only 5 of the 19 operations he analyzed were comparable to the Nordhems' operation.

William Drillias, coordinator of the 1979 ChicagoFest, testified on behalf of the defendants, Harry's Cafe. Drillias testified that in 1978 he received a letter of intent from the Nordhems to participate in the 1979 ChicagoFest. In the letter of intent the Nordhems claimed to "have been involved in six food and beverage operations in Chicago during the past eight years the latest of which is Harry's Cafe." Drillias explained to the trial court that he therefore assumed that he was dealing with Harry's Cafe. Drillias testified that all applicants to ChicagoFest were asked to include information in their applications about the restaurants with which they were associated and that any applicant not associated with a restaurant would probably be rejected by the ChicagoFest committee. Drillias testified that the Nordhems' booth was well run and that the only major problem associated with the Nordhems' participation in the 1979 ChicagoFest was that they refused to use the name of Harry's Cafe, but instead used the name "Wisconsin Bratwurst and Foot Long Hot Dogs" initially and thereafter no name was on the Nordhems' booth. Drillias stated that he recommended to the 1980 ChicagoFest committee that the Nordhems' application for the 1980 ChicagoFest be rejected because the Nordhems had not used the name of Harry's Cafe on their booth in 1979 and because the Nordhems were no longer affiliated with Harry's Cafe after 1979.

Plaintiff and counterdefendant Jon Nordhem testified that due to excessive costs the Nordhems lost $1,439 at the 1979 ChicagoFest.

The trial court concluded that defendants and counterplaintiffs Harry's Cafe *et al.*, did not substantiate their allegations that the Nordhems had damaged the name and reputation of Harry's Cafe by not keeping complete books and records and by not selling the prod-

uct they agreed to sell at ChicagoFest. The trial court further noted that since Drillias' only complaint about the Nordhems' participation in ChicagoFest was that the Nordhems refused to use the name of Harry's Cafe in connection with their booth, the Nordhems could not be said to have held themselves out to be Harry's Cafe at the 1979 ChicagoFest as alleged by Harry's Cafe. The trial court stated that the Nordhems may have traded on the name of Harry's Cafe in order to gain admission to ChicagoFest, thus confusing the coordinator, Drillias, but the contracts between the Nordhems and ChicagoFest were between The Nordhem Company, not Harry's Cafe, and the City of Chicago. The trial court concluded also that William Nordhem deceived the board of directors and breached his fiduciary duty to Harry's Cafe by informing the board that there was insufficient time for Harry's Cafe to apply for a booth at the 1979 ChicagoFest while knowing that he had already filed an application with the 1979 ChicagoFest Committee for The Nordhem Company. The damages to Harry's Cafe for such a usurpation of a corporate opportunity, the' court concluded, were the net profits earned by the Nordhems, and thus lost by Harry's Cafe, at the 1979 ChicagoFest.

The court ruled that Harry's Cafe failed to meet its burden of proving the net profits of the Nordhems. The trial court found the testimony of Harry's Cafe's accountant, Gorden, incompetent because Gorden merely estimated the costs of operating a booth at Chicago-Fest, and while the booth at ChicagoFest was tantamount to operating a hot dog stand for 10 days, Gorden testified that he based his projections on his knowledge of the costs of a "well-operated restaurant." The court also considered Gorden's opinion incompetent because Gorden's projections for the future income of Harry's Cafe at ChicagoFest were "based on a totally fallacious premise," that "merely because 19 companies [only five of which were at all similar to the Nordhems'] survived ChicagoFest for the years 1979, '80, '81 and '82, that their businesses are comparable to the operation that Harry's did or would have operated."

On appeal, Harry's Cafe contends that the testimony of its accountant sufficiently proved the amount of profits Harry's Cafe lost as a result of William Nordhem's breach of his fiduciary duty to Harry's Cafe and the usurpation of a corporate opportunity and that the trial court erred in not assessing the lost profits in accordance with that evidence. We disagree.

■■ ■ Generally, a plaintiff must present competent proof of lost profits from which a reasonable basis of computation can be derived. (*ABC Trans National Transport, Inc. v. Aeronautics Forwarders,*

*Inc.* (1980), 90 Ill. App. 3d 817, 835, 413 N.E.2d 1299.) Harry's Cafe contends, rightly, that the law requires not absolute certainty as to the amount of loss, but rather that the evidence, with a fair degree of probability, tend to establish a basis for the assessment of damages. (*Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill. 2d 143.) The trial court in the instant case, however, was reduced to evaluating the projections of Harry's Cafe in comparison to the actual data of the Nordhems. In a similar circumstance, the court in *ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1980), 90 Ill. App. 3d 817, 835, stated:

> "Plaintiff's economic theory provides one viable way of calculating these losses, yet defendants challenged certain underlying assumptions of that calculation. That the court might have accepted plaintiff's position is certainly a different assertion than that it was compelled to do so. Economic data can be interpreted in different ways for different purposes. As useful as a particular accounting technique may be \*\*\*, it cannot be regarded as conclusive proof of legal damages; the judge or jury must be free to draw their own inferences from the evidence presented."

The accountant for Harry's Cafe gave the trial court an estimate of the profits that Harry's Cafe lost by not participating in Chicago-Fest from 1979 through 1982. The accountant's estimate of the costs of operating a booth at ChicagoFest, admittedly using figures for a "well-operated restaurant," contrasted sharply with the actual costs incurred by the Nordhems in operating their booth. For example, Gorden estimated that the operation of a booth at ChicagoFest would require 8 to 10 employees who would work 12 hours a day at minimum wage and one manager. Jon Nordhem testified that because of the volume of customers at ChicagoFest, 16 employees were required to operate the Nordhems' booth and that the employees worked in excess of 16 hours a day. Nordhem further testified that he paid the employees more than the minimum wage because the Nordhems could not afford absenteeism and that minimum wage, in his experience, was not an incentive for employees to attend work every day for a 10-day festival such as ChicagoFest. Another example, for the cost of supplies, Gorden used a restaurant industry average of 5% of total operating costs as opposed to the Nordhems' actual expenditure of 7% to 8%. Additionally, even though DuBois conceded that Harry's Cafe did not apply to participate in ChicagoFest after 1980, Gorden gave estimates of lost future profits for 1980 through 1982, and at least one of these estimates, the vendor's rent expense, Gor-

den conceded was not based on any investigation. Further, Gorden did not use the actual figures of any of the 19 vendors in his sampling to support his projections. Assuming *arguendo* that the trial court had accepted as competent Gorden's projections of the net profits which the Nordhems could or should have earned at Chicago-Fest from 1979 through 1982, Harry's Cafe nevertheless failed to contradict the testimony of the Nordhems that their operating expenses exceeded their gross receipts and that therefore the Nordhems did not realize any net profits at ChicagoFest but instead suffered a net operating loss.

██ Harry's Cafe contends that William Nordhem's breach of his fiduciary duty to Harry's Cafe made it difficult for Harry's Cafe to calculate its lost profits and that therefore the trial court erred in not allowing evidence of the comparable experience of Marc Malnati, a ChicagoFest vendor from 1979 through 1982, to prove the lost profits of Harry's Cafe. Malnati was called by Harry's Cafe to testify about the nonmonetary benefits which inured to ChicagoFest vendors. The trial court ruled that Malnati would have to be qualified as an expert on the nonmonetary benefits which inured to participants in ChicagoFest before offering such testimony. Malnati testified about nonmonetary benefits that he and his restaurant received as a result of participating in ChicagoFest. We agree with the ruling of the trial court that testimony on the nonmonetary benefits which inured to Malnati from his participation in ChicagoFest, alone, was not relevant to the issue of profits lost by Harry's Cafe and the trial court properly struck this testimony as irrelevant. Moreover, nothing in the trial record supports the allegation of Harry's Cafe that the Nordhems committed any act which rendered the assessment of the plaintiffs' lost profits difficult or not ascertainable.

██ Harry's Cafe next contends that the trial court erred in limiting its damages to the Nordhems' net profits in 1979. On cross-examination of the accountant for Harry's Cafe, Gorden, counsel for the Nordhems renewed an objection made earlier to the accountant's projections of food sales and net profits, which projections the accountant admitted were derived from a sampling of 19 former Chica-goFest operations, only five of which were comparable to the Nordhems' operation at ChicagoFest. Counsel for the Nordhems asked that the accountant's testimony projecting the food sales be struck. In opposition to the motion to strike, counsel for Harry's Cafe cited *The Vendo Co. v. Stoner* (1974), 58 Ill. 2d 289, as authority for its position that it was sufficient that the accountant's projections showed the extent of Harry's Cafe's lost profits damages as a

matter of just and reasonable inference, even though the projections were only approximations. Counsel for Harry's Cafe argued to the trial court, "Again, I submit that it is most competent testimony and appropriate, and he [Gorden] is rendering his opinion on lost profits." After citing the *Vendo* case in the trial court solely in support of the accountant's projections of lost profits, Harry's Cafe now contends on appeal that the trial court "placed an erroneous limitation on Harry's Cafe's damages," and that Harry's Cafe cited the *Vendo* case in the trial court in support of a theory of damages based on something other than lost profits. No such alternative theory of damages appears in the trial record, or in the briefs of Harry's Cafe on appeal for that matter. While Harry's Cafe might have done well to cite *Vendo* in the trial court as authority for another theory of damages based on something other than net profits, Harry's Cafe waived this issue in the trial court and cannot raise it for the first time on appeal. *Shell Oil Co. v. Department of Revenue* (1983), 95 Ill. 2d 541, 550.

■ Harry's Cafe lastly contends that the trial court erred in concluding that the Nordhems did not hold themselves out at the 1979 ChicagoFest as Harry's Cafe and therefore also erred in not allowing evidence of profits Harry's Cafe consequently lost in 1980, 1981 and 1982. We disagree for two reasons. First, Drillias, a witness for Harry's Cafe and the coordinator of the 1979 ChicagoFest, testified that the only major problem associated with the Nordhems' operation was that the Nordhems refused to use the name of Harry's Cafe in connection with their booth. We find no reason to disagree with the trial court's finding that for this reason, the Nordhems cannot be said to have held themselves out to the public as Harry's Cafe. Second, the contention that the trial court disallowed evidence of profits which Harry's Cafe lost by not participating in ChicagoFest in 1980, 1981 and 1982 is totally fallacious. Counsel for Harry's Cafe asked the accountant, Gorden, whether he had an opinion on whether Harry's Cafe would have realized a profit if it had participated in ChicagoFest from 1980 through 1982. Gorden opined that Harry's Cafe would have realized a profit at ChicagoFest in those years. Gorden testified further that his opinion was based on food sales figures of 19 other ChicagoFest vendors, which figures were received from Bernstein and Banks, an accounting firm. During the direct examination of Gorden, plaintiffs' exhibit No. 26, Bernstein and Banks' list of 59 ChicagoFest vendors and their gross sales for 1980 through 1982, was admitted into evidence as a basis for Gorden's projections of profitability by Harry's Cafe from 1980 through 1982. Gorden then

explained in great detail the methodology he used to arrive at his opinion that Harry's Cafe would have realized a profit at ChicagoFest from 1980 through 1982.

We are of the opinion that the trial court properly assessed damages and we therefore affirm.

Affirmed.

LORENZ, P.J., and SULLIVAN, J., concur.