**GREEN CONSTRUCTION COMPANY, an Iowa corporation, Plaintiff, Third–Party Plaintiff,**

v.

**KANSAS POWER & LIGHT COMPANY, Defendant,**

v.

**SEABOARD SURETY COMPANY, Counterclaim Defendant,**

v.

**TERRACON CONSULTANTS, SE, INC., Third–Party Defendant.**

**Civ. A. No. 87–2070–S.**

United States District Court, D. Kansas.

June 22, 1989.

Dale R. Martin, Barokas & Martin, Seattle, Wash., Patrick E. Hartigan, Hartigan & Yanda, P.C., Kansas City, Mo., Frank D. Menghini, McAnany, Van Cleave & Phillips, Kansas City, Kan., for Green Const. Co.

F.B.W. McCollum, Spencer, Fane, Britt & Browne, Kansas City, Mo., J. Nick Badgerow, Overland Park, Kan., Camille Q. Bradford, Topeka, Kan., for Kansas Power & Light Co.

Bernard L. Balkin, Keith Witten, Sandler, Balkin, Hellman & Weinstein, Kansas City, Mo., for Seaboard Sur. Co.

Jeffrey S. Nelson, Thomas R. Buchanan, Shook, Hardy & Bacon, Overland Park, Kan., for Terracon Consultants, SE, Inc.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendant Kansas Power & Light Company's motion for partial summary judgment and to review certain orders of the magistrate. This case was initiated by plaintiff Green Construction Company ("Green") against Kansas Power & Light Company ("KP & L"). Green is seeking additional compensation for work performed under a contract for the construction of KP & L's Jeffrey Energy Center Auxiliary Makeup Lake. A request has been made for oral argument on the motion for partial summary judgment. The court has determined that oral argument would not be of material assistance in the determination of this matter. Rule 206(d), Rules of Practice of the United States District Court for the District of Kansas.

The following facts have been established for the purposes of the motion for partial summary judgment. On January 16, 1985, Green and KP & L entered into a contract. Under the terms of this contract, Green agreed to perform construction work for the Jeffrey Energy Center Auxiliary

Makeup Lake. This work included the construction of an earthen dam and construction of the lakebed. According to the terms of the contract, KP & L was to compensate Green on a lump-sum basis and Green agreed to accept $8,518,496.00 as full compensation for the work required in the contract.

Prior to awarding the contract to Green, KP & L solicited bids from contractors. KP & L provided prospective bidders with information and design specifications, including geotechnical data concerning subsurface conditions. The contract specifications provided that fill for the earthen dam was to be taken from specified burrow areas. In preparing its bid, Green relied on the information provided in the documents given bidders without conducting its own independent research and analysis of the subsurface conditions. Green contends that it had insufficient time to conduct its own investigation of subsurface conditions and that it is the custom and policy of the dam construction industry to rely on geotechnical data provided by owners in the bidding process.

The instructions to bidders, which were incorporated into the contract, contained several sections that are important for the purposes of the present motion. Section A.7, entitled "LOCAL CONDITIONS," stated that "[e]ach bidder shall visit the site of the work and thoroughly inform himself relative to construction hazards and procedure, labor, and all other conditions and factors, local and otherwise, which would affect the prosecution and completion of the work and the cost thereof...." This section further stated:

It must be understood and agreed that all such factors have been properly investigated and considered in the preparation of every proposal submitted, as there will be no subsequent financial adjustment, to any contract awarded thereunder, which is based on the lack of such prior information or its effect on the cost of the work.

Section A.8, entitled "SUBSURFACE CONDITIONS," stated that "[t]he determination of the character of subsurface materials which will be encountered shall be each bidder's responsibility." This section further stated that test borings and laboratory and field tests had been performed for the purposes of the project design. This information was made available to bidders. Section A.8 stated, however, that "[l]ogs of test borings may not be indicative of all subsurface conditions that may be encountered."

Other important contract provisions included sections SC.16, 2B.11.3, 2C.14.4 and 2C.15.4 and D.27. Section SC.16 placed the risk of loss resulting from natural causes on the contractor. This section stated:

All loss or damage arising out of the nature of the work, or from the action of the elements, or from floods or overflows, or from ground water, or from any unusual obstruction or difficulty, or any other natural or existing circumstance either known or unforeseen which may be encountered in the prosecution of the work, shall be sustained and borne by the Contractor at his own cost and expense.

Section 2B.11.3 placed on the contractor the burden of taking whatever steps were necessary to ensure that the soil used in the construction of the dam was at uniform moisture content. Also, section 2C.14.4 placed on the contractor the burden of ensuring that each layer of soil was "sprinkled, wetted, or dried as required to provide a uniform distribution of moisture within the specified range of moisture content after which the layer shall be compacted to the required density...." Section 2C.15.4 stated that "[i]f the fill material in burrow areas or other excavations contains an excess of moisture prior to excavation, the Contractor will be required to excavate the drainage channels or perform such work as may be necessary to reduce the moisture content of the material." Finally, section D.27 provided for the method by which the contractor could recover increased compensation for "extra work" or changes to the work required under the contract.

The contract proposal form provided each bidder the opportunity to note any

exceptions or variations to the contract documents. Green took various exceptions, two of which were accepted by KP & L and incorporated into the contract. Two other exceptions by Green were not accepted. Green took no exception or variation to any of the contract clauses cited above.

During the excavation of the borrow areas, plaintiff encountered ground water at higher elevations than indicated in the geotechnical data provided by KP & L. Also, plaintiff found the soil in designated burrow areas to contain greater moisture than expected. This caused Green to expend more resources for excavation and foundation work than it anticipated when it bid on the project. Green was required to obtain material from areas outside of the burrow areas. Also, Green had to alter its method of excavating and constructing the foundation of the dam. During the course of construction, Green submitted a claim to KP & L requesting additional compensation in the amount of $1,991,992.84 because of the additional and increased costs associated with the excessive moisture in the soil. KP & L refused Green's request for additional compensation. On February 10, 1987, Green initiated this present lawsuit. Defendant now moves for partial summary judgment on plaintiff's claim for additional compensation in the amount of $1,991,-992.84.

## A. *Summary Judgment*

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.,* 758 F.2d 1381, 1387 (10th Cir.1985). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-

moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

Green is prosecuting its claim for additional compensation under three theories of recovery. Green contends it can recover the additional compensation because (1) there has been a constructive change in the contract; (2) KP & L breached an implied warranty regarding information provided to bidders on the subsurface conditions; and (3) KP & L misrepresented information provided to bidders. The court will deal with each theory individually, and determine whether plaintiff can proceed with its claim for additional compensation under these theories.

## B. *Constructive Change*

It is undisputed that Green encountered excessive moisture in the soil at the project site. As a result, Green's performance of the contract was made more difficult and more expensive. The issue to be determined is which party should bear the added cost of this complication. Green contends that it is entitled to the additional compensation because the excessive moisture in effect was a constructive change in the work to be performed under the contract. Therefore, Green contends it is entitled to additional compensation under the change

order provision of the contract (section D.27).

The change order provision of the present contract, section D.27, provides that a contractor is entitled to additional compensation for extra work or changes in the work to be performed under the contract. This section of the contract is not applicable in the present situation. This section applies to changes in the scope of work due to a change in the project design, not to difficulties in performance of the specified work as the result of unforeseen, adverse conditions. *See Pinkerton & Laws Co. v. Roadway Express, Inc.*, 650 F.Supp. 1138, 1145 (N.D.Ga.1986). Some construction contracts contain a "change conditions" or "differing site conditions" clause, which allow additional compensation for unexpected site conditions. The present contract between Green and KP & L did not contain such a clause.

The terms of the Green and KP & L contract placed the risk of unforeseen subsurface conditions or soil conditions on the contractor, Green. The instructions to bidders stated that each bidder was responsible for determining the character of subsurface materials. *See* section A.8 of the contract. Also, a special condition of the contract provided that any loss due to unusual obstruction or difficulty or natural or existing circumstances would be sustained and borne by the contractor. *See* section SC.16. Furthermore, the terms of the contract indicate that the contractor would bear the burden of taking all necessary steps to ensure that the moisture content of the soil used was appropriate. *See* sections 2B.11.3 and 2C.14.4.

It is established that "when the contract contains no change conditions clause and imposes a site inspection requirement on the contractor, the risk of uncertainty of subsurface conditions is placed on the contractor." *Pinkerton and Laws*, 650 F.Supp. at 1146 (citations omitted). Thus, in the present contract, the risk of additional expenses resulting from unforeseen subsurface soil conditions was placed on Green. Nevertheless, this risk may be avoided if KP & L impliedly warranted the plans and specifications provided to the bidders and KP & L breached that warranty. *See Id.; Anderson v. Golden*, 569 F.Supp. 122, 142 (S.D.Ga.1982). Also, the risk may be avoided and KP & L may be liable for the additional expenses if KP & L has misrepresented material facts about site conditions in the information it provided to bidders. *See Pinkerton & Laws*, 650 F.Supp. at 1147; *Anderson*, 569 F.Supp. at 143; and *Eastern Tunneling Corp. v. Southgate Sanitation Dist.*, 487 F.Supp. 109, 115 (D.Colo.1980).

### C. *Implied Warranty Theory*

Plaintiff contends that the information provided to bidders regarding subsurface conditions created implied warranties that the conditions would be as indicated in the provided data. Implied warranties are generally not favored by law and are construed narrowly. *See Connolly v. Samuelson*, 671 F.Supp. 1312, 1318 (D.Kan. 1987); *Griffith v. Byers Const. Co.*, 212 Kan. 65, 69, 510 P.2d 198, 202 (1973).

The contract between Green and KP & L contains no express statement regarding the presence or absence of moisture in the subsurface material. However, KP & L did provide Green with the data compiled by KP & L's agent, which tested and analyzed subsurface conditions. The contract, however, did not state that this data was all the information needed by bidders or that the data was correct. *See Pinkerton & Laws*, 650 F.Supp. at 1146. In fact, the contract instructed bidders to visit the construction site to ascertain the conditions of the site. *See* sections A.7 and A.8 ("The determination of character of subsurface materials which will be encountered shall be each bidder's responsibility."). Also, the terms of the contract place the risk of excessive moisture in the soil on the contractor. *See* sections SC.16, 2B.11.3, and 2C.14.4. Finally, the contract expressly stated that the "[l]ogs of test borings may not be indicative of all subsurface conditions that may be encountered." Section A.8.

In a very similar situation, the United States District Court for the Southern Dis-

trict of Georgia found that no implied warranty had been created regarding the information the owner provided the contractors on soil borings. *See Anderson v. Golden,* 569 F.Supp. at 142–43. The *Anderson* case involved contract language quite similar to the contract language in the present case. The *Anderson* contract specifically provided that the contractor was responsible for investigating soil and subsoil conditions (similar to section A.8 of the Green–KP & L contract); for visiting the site and familiarizing itself with local conditions (similar to section A.7 of the Green–KP & L contract); and did not guarantee the accuracy of the soil conditions data (similar to section A.8 of the Green–KP & L contract). Furthermore, the contract squarely placed the risk of uncertainty on the contractor (similar to sections SC.16 and 2B.11.13 and 2C.14.4 of the Green–KP & L contract). This court agrees with the *Anderson* court's reasoning and finds that KP & L did not impliedly warrant the accuracy of its agent's investigation and data analysis of the soil and subsurface conditions. Therefore, Green cannot pursue its claim under the theory of implied warranty.

## D. *Misrepresentation Theory*

Even though the Green–KP & L contract did not contain a changed conditions clause or implied warranties regarding the accuracy of soil and subsurface testings, the question remains whether KP & L is liable to Green because of material misrepresentations of facts about subsurface conditions. Although the contract places the risk of uncertainty on the contractor, the contract does not absolve KP & L of the duty not to materially misrepresent conditions. *See Anderson,* 569 F.Supp. at 143.

▇ Under Kansas law, to recover on a claim of fraudulent misrepresentation, plaintiff must show that defendant made a representation or statement of material fact which was untrue and known to be untrue or recklessly made with disregard of its truth or falsity, on which plaintiff reasonably relied to its detriment. *See Goff v. American Savings Association of Ks.,* 1 Kan.App.2d 75, 78, 561 P.2d 897, 901

(1977). A fact is material if it is one to which a reasonable person would attach importance in determining his choice of action in the involved transaction. *See Timi v. Prescott State Bank,* 220 Kan. 377, 389, 553 P.2d 315, 325 (1976). The moisture content of the soil and subsurface conditions of the project site were material facts. The parties making the misrepresentations must know that they are untrue, or they were made with reckless disregard for the truth. Also, reliance on the statements must be reasonable and justified. *See Tetuan v. A.H. Robins Co.,* 241 Kan. 441, 467, 738 P.2d 1210, 1228 (1987) (citing *Hutchinson Travel Agency, Inc. v. McGregor,* 10 Kan.App.2d 461, 701 P.2d 977 (1985)).

▇ In its motion for summary judgment, KP & L contends that plaintiff fails to present evidence to support two essential elements of a fraudulent misrepresentation claim. KP & L contends that Green presents no evidence showing KP & L had actual knowledge of the untruthfulness of the soil data provided bidders and that Green has failed to present evidence that it justifiably relied on this information.

With regard to the reliance element of fraudulent misrepresentation, the court finds that plaintiff has presented sufficient evidence to raise an issue of fact about whether plaintiff justifiably relied on the information provided in the instructions to bidders. The evidence, submitted in the form of affidavits, indicates that Green did not have sufficient time under the time frame designed by KP & L for the submission of bids to conduct an independent inspection of the subsurface conditions. Also, plaintiff submitted evidence indicating that it is the custom or common practice of the construction industry to rely on the soil and subsurface tests conducted by the owner and supplied with the instructions to bidders when making bids on construction projects. *See also Anderson v. Golden,* 569 F.Supp. 122, 143 (S.D.Ga. 1982); *Pinkerton & Laws Co. v. Roadway Express, Inc.,* 650 F.Supp. 1138, 1148 (N.D. Ga.1986).

Regarding the essential element of knowledge, however, plaintiff fails to present any evidence that KP & L knew that the information provided bidders was inaccurate or acted with reckless disregard of the information's accuracy. Green merely makes accusations and allegations that KP & L had access to additional geotechnical information regarding the subsurface conditions, but failed to disclose this information. Green presents absolutely no evidence to support this allegation. Since it has failed to present any evidence of defendant's knowledge or recklessness, plaintiff fails to establish this essential element of a claim for fraudulent misrepresentation. Therefore, the court finds that defendant is entitled to summary judgment on plaintiff's claims under the theory of fraudulent misrepresentation. The court is willing to reconsider this finding if plaintiff can present sufficient evidence to raise an issue of fact regarding defendant's knowledge of the information's inaccuracy. Without such evidence, the court must grant defendant's motion.

Having found that plaintiff may not maintain its claim under the three theories it asserts, the court will grant defendant's motion for partial summary judgment on plaintiff's claim for additional compensation.

### E. *Defendant's Motions for Review of Magistrate's Orders.*

Defendant KP & L has filed motions to review an order of the magistrate issued on September 13, 1988, granting plaintiff Green and counterclaim defendant Seaboard Surety Company's ("Seaboard") motion to compel inspection of KP & L's property. Also, KP & L has filed a motion to review an order of the magistrate issued December 29, 1988, which reaffirmed the September 13 order and expounded on that order. The December Order also denied Green and Seaboard's motion to compel production of reports of KP & L's quality control testing which were conducted during the reconstruction of the dam. Also, the December 29, 1988 Order denied KP & L's motion for protective order to prevent Green's deposition of KP & L's expert and granted Green's motion for leave to depose KP & L's experts.

The court has thoroughly reviewed the magistrate's order of December 29, 1988, and his order of October 24, 1988, and all the pleadings submitted by the parties regarding discovery matters at issue in those orders.

The district court's scope of review of a magistrate's determination under 28 U.S.C. § 636(b)(1)(A) is whether the order has been shown to be "clearly erroneous or contrary to law." This standard of review of nondispositive motions was approved by the United States Supreme Court in *United States v. Raddatz*, 447 U.S. 667, 673, 100 S.Ct. 2406, 2411, 65 L.Ed.2d 424 (1980). Local Rule 604(a) similarly states that the court, when considering an appeal from the magistrate's order, shall accept the magistrate's findings of fact unless they are clearly erroneous. *See also* Fed.R.Civ.P. 72(a).

■ The court finds that the magistrate's findings are not erroneous. In fact, the court finds that the order of December 29, 1988, properly addressed the issues before the court and correctly applied the relevant law to the facts at hand. Specifically, this court finds that the magistrate's order granting Green and Seaboard access to and inspection of the construction site during the reconstruction phase was proper. KP & L argues that the reconstruction phase is irrelevant to the lawsuit. In the discovery context, relevancy is given a broad and liberal definition. Moreover, the court finds that access and inspection during reconstruction is necessary for Green and Seaboard may attempt to show differences between the methods and specifications used in the reconstruction process from those used during the original construction. The litigants cannot rely on KP & L's assurances that the same specifications and methods will be used in the reconstruction process.

Green also made a motion to compel discovery (document 141). The court denied this request to compel production of certain documents. This was a request to compel

the production of documents and things pertaining to the demolition and reconstruction efforts at the dam. The magistrate denied this motion, finding that the material requested was qualified as work product and thus not discoverable. The magistrate did note that certain work product material is discoverable if there is a substantial need for the materials sought and the requesting party is unable, without undue hardship, to obtain the substantial equivalent of the materials by any other means. In response to KP & L's motion to review the magistrate's orders, Green actually makes its own motion for review and reconsideration of the magistrate's denial of this motion to compel. Green did not file a reply to KP & L's opposition to this earlier motion to compel. In the response to the present motion, however, Green makes arguments that the requested material is substantially needed and that it was unable to obtain this information.

The court finds that Green has been dilatory in pursuing this matter. The court, however, is convinced by Green's argument that this material is needed and that no other means was available to Green for obtaining this information. The court must emphasize, however, that KP & L need only make available the tests and data compiled by its consultants for the time during which Green was deprived of any access to the construction site, that is prior to the access made available in July of 1988.

Finally, the court finds that the magistrate's order denying KP & L's motion for protective order and granting Green and Seaboard's motion to depose KP & L's experts was proper and this court will not overturn that decision. The magistrate did not commit error in allowing the experts to be deposed. The magistrate's order was grounded and properly supported by case law and is correct, given the nature of this lawsuit which is heavily dependent on the testimony of expert witnesses. Therefore, the court will deny KP & L's motion to review the magistrate's order, but will grant Green's motion to review the magistrate's order and thus allow the production of some of the documents requested in

Green's motion to compel, as limited and described in this Memorandum & Order.

IT IS BY THE COURT THEREFORE ORDERED that defendant's motion for summary judgment on plaintiff Green Construction Company's claim for additional compensation in the amount of $1,991,-992.84 is granted. IT IS FURTHER ORDERED that defendant KP & L's motion to review the September 13, 1988, October 24, 1988, and December 29, 1988 orders of the magistrate is denied. IT IS FURTHER ORDERED that plaintiff Green Construction Company's motion to review the order of the magistrate is granted, but only to the limited extent as provided in this Memorandum & Order.