**KELLEY METAL TRADING COMPANY, Plaintiff,**

v.

**AL–JON/UNITED, INC., Defendant.**

No. 92–4116–RDR.

United States District Court,
D. Kansas.

Feb. 21, 1995.

Donald Patterson, Fisher, Patterson, Sayler & Smith, Topeka, KS, Elliot M. Kaufman, Ronald H. Isroff, F. Thomas Vickers, James A. DeRoche, Ulmer & Berne, Cleveland, OH, Brenda L. Head, Davis, Unrein, Hummer, McCallister & Buck, Topeka, KS, Gregory Whitney, Pittsburgh, PA, for Kelley Metal Trading Co.

Kelley Metal Trading Co., pro se.

John H. Stauffer, Jr., Harold S. Youngentob, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, Mark I. Wallach, David James Carney, Calfee, Halter & Griswold, Cleveland, OH, Curtis S. Sneden, Topeka, KS, for Al–Jon/United, Inc.

### MEMORANDUM AND ORDER

ROGERS, Senior District Judge.

This matter is presently before the court upon plaintiff's motion for a new trial. Having carefully reviewed the arguments of the parties, the court is now prepared to rule.

On November 16, 1994, a jury found for the defendant on plaintiff's breach of express warranty claim, the remaining claim in this case. Prior to the verdict, the court had entered judgment for the defendant as a matter of law on plaintiff's claims of fraud and breach of implied warranty of merchantability and a portion of plaintiff's claims of breach of express warranty. The court had also concluded that plaintiff could not recover consequential damages or lost profits.

The court shall only briefly recap the facts of this case. In 1987, Blake Kelley, an individual who had been in the scrap business for over ten years, contacted the defendant and expressed an interest in purchasing a wire reclamation furnace. The defendant, who was located in Topeka, Kansas, manufactured wire reclamation furnaces. Kelley had not previously engaged in the wire reclamation business, but he wanted to expand his scrap business into this area. As part of his investigation, Kelley contacted other manufacturers of wire reclamation furnaces and individuals who were in the wire reclamation business. He observed several furnaces, including some manufactured by the defendant, in operation. In early 1990, he decided to buy a furnace from the defendant. He incorporated Kelley Metal Trading Company in June 1990 for the purpose of operating a business reclaiming wire and motors. He ultimately signed a purchase agreement to acquire a G–466 wire reclamation furnace from the defendant on June 28, 1990. As part of the contract, the defendant agreed to repurchase the furnace if the Ohio Environmental Protection Agency (EPA) did not issue a permit to operate the furnace. Prior to purchase, Kelly Pettit, the President of the defendant, had represented to Blake Kelley that the G–466

furnace would burn wire at the rate of 250 to 300 pounds per hour and that plenty of scrap wire was available to burn in the furnace. Pettit's source for this information came from other customers who had used and were presently using the G–466 furnace.

Kelley started the business of Kelley Metal Trading Company in Shaker Heights, Ohio with his brother, Clint Kelley. Clint Kelley was hired to operate the business, including the furnace. He was an attorney who had no experience in the wire reclamation business and no experience operating wire reclamation furnaces. The furnace arrived in December 1990. Kelley Metal was issued a permit to install the furnace by the Ohio EPA in February 1991. The permit to install allowed the plaintiff to operate the furnace for ninety days, at which time an emissions test would be conducted by the Ohio EPA to determine if the furnace would be allowed a permit to operate. The Kelleys operated the furnace for several weeks. They were not satisfied with the production of the furnace. They found that they were unable to make the furnace perform as it had been represented by agents of the defendant. The defendant was contacted about the productivity, and suggestions were offered for increased performance. The Kelleys saw no improvement.

On April 26, 1991, the first emissions test or stack test of the furnace was conducted by the Ohio EPA. Hobart Taylor, an employee of the defendant, was sent to Ohio to assist the Kelleys with the stack test. The furnace failed the Ohio EPA's emission standards in that the emission of chlorine and particulates exceeded the EPA standards. The defendant offered several suggestions so that the furnace could pass EPA standards. The defendant installed a damper on the furnace to control the particulate emission problem. The defendant's agents thought the problem with the chlorine emissions involved the failure of the Kelleys to properly exclude chlorinated wire from burning in the furnace. Clint Kelley was not satisfied with the methods provided by the defendant to separate PVC wire from non-PVC, and he developed his own sorting protocol. The EPA subsequently approved his separating procedures.

A second round of tests was conducted on June 16, 1991. The defendant sent three employees, including President Pettit, to Ohio to assist with the second test. The furnace once again failed to meet the emissions standards. The defendant offered two alternatives to the plaintiff. First, they offered to repurchase the furnace as previously agreed. Second, they offered to provide a chlorine scrubber to the plaintiff at a discounted price. Plaintiff was unwilling to do either. This lawsuit was filed in 1992.

In the instant motion, plaintiff raises a number of arguments in support of its motion for new trial. First, plaintiff argues that the court erred in granting judgment as a matter of law to the defendant on its claims of fraud and breach of implied warranty of merchantability. Second, plaintiff contends that the jury's verdict on the breach of express warranty claim was against the weight of the evidence. Third, plaintiff asserts that the court abused its discretion by deferring a ruling on defendant's motion for judgment as a matter of law until the close of the evidence. Fourth, plaintiff argues that the court erred as a matter of law in failing to rule that the defendant's warranty limitations were void. Fifth, plaintiff contends that the court erred in not allowing the jury to consider plaintiff's request for lost profits and in requiring that the plaintiff's damages be mitigated after the second stack test. Finally, plaintiff argues that the court erred in not allowing testimony on "cheating" by the defendant during the stack tests as it related to issues of the availability and sortability of chlorinated wire and the productivity of the furnace.

■■■ A motion for new trial is committed to the sound discretion of the trial court. *Ryder v. City of Topeka,* 814 F.2d 1412, 1424 (10th Cir.1987). A new trial may be granted if the verdict is against the weight of the evidence or if prejudicial error has occurred. *Anderson v. Phillips Petroleum Co.,* 861 F.2d 631, 637 (10th Cir.1988).

The court shall first consider the plaintiff's arguments that the court erred in granting judgment as a matter of law to the defendant on its claims of fraud and breach of implied warranty of merchantability. Plaintiff con-

tends that it presented sufficient evidence on these matters to allow them to be considered by the jury.

An order granting a motion for judgment as a matter of law under Fed. R.Civ.P. 50 is proper when the court, reviewing the evidence and inferences most favorably to the non-moving party, finds that there is insufficient evidence upon which the jury could properly find for the non-moving party. *Rajala v. Allied Corp.*, 919 F.2d 610, 615 (10th Cir.1990), *cert. denied*, 500 U.S. 905, 111 S.Ct. 1685, 114 L.Ed.2d 80 (1991). In ruling on such a motion, the court must apply the substantive evidentiary burden of proof which applies to the non-moving party's claims at trial. *Id.*

To recover on a claim of fraudulent misrepresentation under Kansas law, a plaintiff must show by clear and convincing evidence that a defendant made a representation or statement of material fact which was untrue and known to be untrue or recklessly made with disregard of its truth or falsity, on which plaintiff reasonably relied to his detriment. *Tetuan v. A.H. Robins Co.*, 241 Kan. 441, 738 P.2d 1210, 1230 (1987).

Two of the fraud claims alleged by the plaintiff in this case remained at the time of trial. Plaintiff contended that the defendant made the following fraudulent misrepresentations: (1) the wire reclamation furnace would process 250 to 300 pounds per hour of combustible insulation while complying with EPA pollution requirements; and (2) PVC wire, which could not be burned in the furnace, constituted only a small percentage of the scrap wire available and could be easily separated from the non-PVC prior to burning. The court found that plaintiff had failed to produce sufficient evidence that the defendant knew that the representations were untrue or that they were made with disregard of their truth or falsity. The evidence, when viewed in the light most favorable to the plaintiff, demonstrated that such statements were made and they may have been inaccurate. Nevertheless, the evidence that they were made with an intent to deceive or recklessly made with disregard for their truthfulness was lacking. Such evidence is neces-

sary to avoid judgment as a matter of law. *See Whitten v. Farmland Industries, Inc.*, 759 F.Supp. 1522, 1542 (D.Kan.1991); *Green Construction Co. v. Kansas Power & Light Co.*, 717 F.Supp. 738, 744 (D.Kan.1989). As to the claim concerning the productivity of the furnace, plaintiff offered little on the defendant's knowledge that the furnace could not process 250 to 300 pounds per hour of combustible insulation and comply with EPA standards. Plaintiff attempted to suggest that the defendant had an inadequate basis for making such a representation. However, the only evidence offered by the plaintiff on this issue came from Chris Hartman and Don Campbell. Hartman, a former employee of the defendant, suggested that the productivity figures of the company may have come from one customer in Tennessee and were from a machine produced prior to 1989. Campbell, a former service engineer for the defendant, testified that the defendant had a reputation in the field that was not favorable. He did not, however, provide any testimony concerning the productivity of the G–466 furnace. This rather limited testimony offered by the plaintiff was wholly insufficient to demonstrate that the defendant made the representations concerning productivity of the G–466 furnace recklessly or with a wrongful intent, particularly after the court heard from several customers of the defendant who owned a G–466 furnace and had achieved the productivity figures suggested by the defendant.

The evidence concerning the availability of wire to burn in the furnace was similarly deficient. Plaintiff did offer evidence that of all copper wire encased in plastic insulation, 40% or slightly more is encased in PVC insulation. Again, this evidence, in light of the other evidence concerning the availability of wire encased in mediums other than plastic, is insufficient to demonstrate wrongful intent or recklessness. The same must be said about the statements concerning the ability to separate the wire. Plaintiff produced no evidence of wrongful intent or recklessness by the defendant in making this statement. Moreover, the evidence provided by the defendant showed that other individuals in the wire reclamation business had no problems in obtaining large amounts of non-

PVC wire and had no problems in separating PVC wire from non-PVC wire. The court recognizes that plaintiff could demonstrate the requisite intent by circumstantial evidence, but we failed to find sufficient evidence to avoid judgment as a matter of law, particularly when the court must consider that plaintiff was obligated to make this showing by clear and convincing evidence.

 The implied warranty of merchantability, which is set forth in K.S.A. 84–2–314, provides that an ordinary buyer in a normal commercial transaction has a right to expect that goods which are purchased will not turn out to be completely worthless. *International Petroleum Services, Inc. v. S & N Well Service, Inc.*, 230 Kan. 452, 639 P.2d 29, 32 (1982). In this case, plaintiff contended that the furnace failed to comply with the implied warranty of merchantability because "it cannot legally be used to process scrap wire." Under the circumstances of this case, the court found that plaintiff was not entitled to an implied warranty claim since plaintiff understood that the furnace might not pass EPA standards. In fact, the evidence showed that plaintiff requested some relief if the furnace did not pass EPA standards. The defendant offered a buy-back provision and the plaintiff readily accepted. These circumstances indicate that plaintiff was not entitled to an implied warranty for this particular claim. The furnace here met the standards of K.S.A. 84–2–314 in that it did burn scrap wire. The fact that it might not pass EPA standards was understood by plaintiff when he asked the defendant for some protection if the furnace failed. Accordingly, the defendant was entitled to judgment as a matter of law on this claim.

 Plaintiff contends that the jury's verdict on the remaining breach of express warranty claims was against the weight of the evidence. Plaintiff had alleged that the defendant expressly warranted that the furnace could process 250 to 300 pounds of combustible insulation and comply with EPA pollution standards. Plaintiff contended that the furnace failed to conform with this express warranty. The defendant had asserted that the furnace could perform as warranted.

The jury determined that the defendant had not breached any express warranty.

 A motion for new trial on the grounds that the jury verdict is against the weight of the evidence normally involves a review of the facts presented at trial, and thus involves the discretion of the court. *Black v. Hieb's Enterprises, Inc.*, 805 F.2d 360, 363 (10th Cir.1986). The trial court must focus on whether the verdict is clearly, decidedly, or overwhelmingly against the weight of the evidence. *Id.*

A review of the facts in this case suggests that the jury's verdict was not against the weight of the evidence. The evidence concerning the ability of the furnace to operate at the levels suggested by the defendant and conform to EPA standards was disputed. The jury's reliance upon the evidence presented by the defendant was not unreasonable. Accordingly, the court finds that the jury verdict was not against the weight of the evidence.

 Plaintiff contends that the court erred as matter of law in failing to rule that defendant's warranty provisions were void. Plaintiff argues that the court should have made such a ruling after Kelly Pettit acknowledged that it would be difficult to operate the furnace without violating a provision which stated that the warranty was void if chlorinated wire was used in it.

The defendant contends that this argument must be rejected because this is the first time plaintiff has raised it. The defendant notes that this claim was not made in the pretrial order and was not urged at trial.

The court agrees with the argument of the defendant. The issue was not raised by plaintiff in the pretrial order. Moreover, plaintiff failed to seek any relief from the court based upon this argument at the conclusion of the trial. Plaintiff requested no instruction on this issue during the instructions conference. The court does not believe that a new trial is warranted based upon this new contention.

 Plaintiff argues that the court erred by deferring a ruling on defendant's motion for judgment as a matter of law until after

the close of the evidence. Plaintiff suggests that this "delay" caused "undue and unreasonable confusion in the minds of the jury."

At the close of the plaintiff's case, actually at the conclusion of the direct examination of plaintiff's last witness, defendant sought judgment as a matter of law pursuant to Fed.R.Civ.P. 50 on all claims asserted by the plaintiff. The court took the matter under advisement at that time. The defendant renewed the motion at the conclusion of all evidence. The court made the aforementioned rulings at that time.

The court finds no error in its decision to await the presentation of all evidence before ruling on defendant's motion. The approach taken by the court is the preferred method. *See* Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 2533 (1995) (better practice to defer ruling on motion for directed verdict until both sides have rested); *United States v. Vahlco Corp.*, 720 F.2d 885, 889 (5th Cir.1983) ("Where there is any doubt at all as to the propriety of a directed verdict, district courts should not jump the gun but should wait until both sides have presented their evidence before ruling on motions for directed verdict.").

■ The other arguments made by the plaintiff relate to evidentiary rulings made by the court. Any error in admitting or excluding evidence does not justify the granting of a new trial unless the error affected the substantial rights of the parties. *Herndon v. Seven Bar Flying Service, Inc.*, 716 F.2d 1322, 1326 (10th Cir.1983), *cert. denied*, 466 U.S. 958, 104 S.Ct. 2170, 80 L.Ed.2d 553 (1984). We do not believe that we erred in any of these rulings. Even if we did, we do not find that the substantial rights of the plaintiff were affected by any of these decisions.

Plaintiff contends that the court erred in not allowing the jury to consider the issue of lost profits after the court had allowed plaintiff to introduce evidence on lost profits. Plaintiff asserts that Blake Kelley had both the "personal knowledge and experience" to provide testimony on lost profits. Plaintiff also contends that the court erred in requiring the plaintiff to mitigate damages after the second stack test.

■ These issues are somewhat related. Plaintiff fails to understand that the court articulated two bases for its decision not to allow the jury to consider the issue of lost profits. First, the court found that the jury could not consider lost profits because plaintiff had failed to present any evidence of mitigation after the failure of the furnace to pass the second EPA test. In Kansas, a buyer's failure to cover when cover is reasonably available will preclude recovery of consequential damages including lost profits. K.S.A. 84–2–715(2)(a); *Panhandle Agri–Services, Inc. v. Becker*, 231 Kan. 291, 644 P.2d 413, 419 (1982); *International Petroleum*, 639 P.2d at 38; *State Office Systems, Inc. v. Olivetti Corp of America*, 762 F.2d 843, 847 (10th Cir.1985). The burden is upon the buyer to demonstrate a reasonable attempt on his or her part to prevent further loss by cover. *International Petroleum*, 639 P.2d at 38. The second stack test provided the significant date for the purposes of mitigation because it was at that time that plaintiff became aware that the furnace could not be operated. It was at this point that Kansas law required plaintiff to minimize its damages in good faith. *See* K.S.A. 84–2–715, Official UCC Comment 2. Since plaintiff failed to present any evidence of mitigation after the second stack test, the court found that no recovery of consequential damages could be had by plaintiff after that time.

■ Second, the court determined that an additional reason precluded any recovery for lost profits in this case. Lost profits may be recovered as damages when such profits are proven with reasonable certainty and when they may reasonably be considered to have been within the contemplation of the parties. *Vickers v. Wichita State University*, 213 Kan. 614, 518 P.2d 512, 515 (1974). The Kansas courts have not allowed lost profits under the circumstances that were present in this case. *See Butler v. Westgate State Bank*, 226 Kan. 581, 602 P.2d 1276, 1277–79 (1979) (evidence of lost profits for new business, which consisted of one person's testimony, held to be too speculative in breach of contract action); *Sullivan v. Sproule*, 176 Kan. 274, 269 P.2d 1015, 1018

(1954) (evidence of lost profits can only be recovered in breach of contract action where business "had been in successful operation for such time as to give it permanency and that it was making earnings which could reasonably be ascertained"). *Also see K–B Trucking Co. v. Riss International Corp.,* 763 F.2d 1148, 1160 (10th Cir.1985). The only evidence on lost profits in this case came from Blake Kelley. This evidence was found by the court to be too speculative given the fact that the business was new and there was no reasonable basis from which to determine lost profits. Accordingly, for these two reasons, the court found consideration of lost profits by the jury would be improper. The court is not persuaded that we erred in this ruling.

■ Plaintiff also asserts that the court erred in not allowing evidence of "cheating" by the defendant during the stack tests. Plaintiff contends that the court should have allowed this evidence because it would have supported its position on the issues of the availability and sortability of chlorinated wire and the productivity of the furnace.

The court is not persuaded by plaintiff's argument that we erred in refusing to allow the evidence that the defendant "cheated" on the stack tests. The court had concerns about this evidence from the outset of the trial. The probative value of this evidence was questionable except as it related to the ability of the furnace to pass the EPA standards. Once the defendant stipulated that the furnace had in fact failed to pass the EPA standards, the court found that whatever probative value the evidence had, it was outweighed by its prejudicial impact. The present arguments of the plaintiff fail to convince the court that it erred in the rulings made during the trial. The court remains convinced that whatever probative value this evidence had, it was outweighed by its prejudicial impact and by its potential ability to confuse the jury.

In sum, the court does not find that plaintiff is entitled to a new trial. The jury's verdict represented a thorough consideration of the disputed evidence in this case. The court cannot guarantee that the parties received a perfect trial, but we are convinced that they received what they are entitled to—a fair trial. *See McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 553, 104 S.Ct. 845, 848, 78 L.Ed.2d 663 (1984).

**IT IS THEREFORE ORDERED** that plaintiff's motion for a new trial (Doc. # 160) be hereby denied.

**IT IS SO ORDERED.**