NOT DESIGNATED FOR PUBLICATION

No. 127,652

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BIG BOI TRUCKING & LOGISTICS LLC, et al.,
*Appellants*,

v.

TAFS, INC.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Submitted without oral argument. Opinion filed June 6, 2025. Affirmed.

*Donald M. McLean*, of Kansas City, for appellant.

*Benjamin A. Reed* and *Joel H. Driskell*, of Seigfreid Bingham, PC, of Kansas City, Missouri, for appellee.

Before PICKERING, P.J., BRUNS and SCHROEDER, JJ.

PER CURIAM: Big Boi Trucking & Logistics LLC (Big Boi) and TAFS, Inc., were parties to a factoring services agreement (FSA). After disputes following the FSA's expiration, Big Boi sued TAFS for tortious interference with prospective business advantage or relationship, fraud by promise of future events, fraud, and fraud by silence. The district court granted summary judgment for TAFS, in relevant part finding Daren Ashburn, the sole owner and operator of Big Boi, lacked standing in his personal capacity; Big Boi failed to show damages, an element to each of its tort claims; and Big Boi's claims improperly sounded in tort.

1

Big Boi now appeals and presents three arguments: (1) Its claims properly sounded in tort; (2) there was sufficient evidence for a jury to find recoverable lost profits damages; and (3) Ashburn had standing in his personal capacity because he became a party to the FSA. After reviewing the record, we find there is no genuine issue of material fact regarding damages, as Big Boi failed to present sufficient evidence of damages for a jury to calculate damages with reasonable certainty. Because each of Big Boi's tort claims required damages as an element, this issue is dispositive. Therefore, the district court did not err in granting summary judgment on the grounds that Big Boi failed to show recoverable damages, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Ashburn began operating his trucking business, Big Boi, in May 2021. On May 6, 2021, Big Boi and TAFS executed an FSA, whereby Big Boi would sell its accounts receivable—in the form of invoices from hauling cargo loads—to TAFS, and TAFS would advance to Big Boi the purchase price of the accounts receivable. The FSA was set for a one-year term to expire on May 6, 2022, with automatic one-year renewals unless either party provided written notice at least 90 days but not more than 120 days before the expiration date. Ashburn signed a personal guaranty for Big Boi's obligations under the FSA.

Paragraph 8 of the FSA discussed the parties' duties upon termination:

"Upon termination of this Agreement, any funds or monies from any source whatsoever which TAFS would otherwise owe to [Big Boi] may be retained by TAFS until such time as all obligations and debts of [Big Boi] to TAFS have been fully satisfied, and TAFS's security interest provided in Section 6 hereof shall continue until all obligations of [Big Boi] to TAFS are paid in full. TAFS shall have the right, in its sole discretion, to set off against any sums owing to [Big Boi] by TAFS all obligations and debts of [Big Boi] to TAFS. All of [Big Boi]'s covenants, warranties and agreements under this Agreement

2

made to TAFS, as well as TAFS's security interest pursuant to Section 6 above, shall continue in full force and effect until all Accounts purchased hereunder and all debts and obligations of [Big Boi] to TAFS are paid in full. Further, if TAFS receives payment from any Account Debtor(s) or other party on any of [Big Boi]'s invoices following termination of this Agreement and satisfaction in full of all debts and obligations of [Big Boi] to TAFS, then TAFS may, at its option, either: (a) forward such payment to [Big Boi]; or (ii) return such payment to the Account Debtor/payer without any further liability or responsibility to [Big Boi] in respect thereof."

On February 5, 2022, Big Boi provided timely notice of its intent to terminate the FSA upon its expiration date. TAFS responded three days later, confirming receipt of Big Boi's notice and confirming the FSA was eligible for termination on May 6, 2022.

Disputes arose after the FSA expired on May 6, 2022. In the days after expiration, Ashburn sent multiple requests for a letter releasing Big Boi from its obligations under the FSA. Ashburn stated he was attempting to have another factoring services company buy out his outstanding accounts receivable. TAFS responded on May 18, 2022, stating it was "currently waiting on payments from debtors on the open receivables. Once this is clear, a release letter can be provided."

On June 9, 2022, Big Boi's prospective factoring company, RoadEx, first contacted TAFS about potentially buying out Big Boi's outstanding accounts receivable. On June 16, 2022, Big Boi authorized TAFS to communicate with RoadEx about a buyout. TAFS sent a buyout calculation and proposed buyout agreement to RoadEx that same day. The aging report showed $3,843 in outstanding accounts receivable—$1,700 attributed to Automated Logistics Systems (ALS); $2,013 attributed to Geodis Transportation Solutions; and $130 attributed to Landstar. The buyout calculation report showed a total proposed buyout of $6,747.12—the $3,483 in open receivables; a "miscellaneous" fee of $904.12; and a $2,000 handling fee.

TAFS had received a $1,700 payment from ALS in April 2022, though TAFS placed the payment on Big Boi's held ledger because the payment lacked remittance information. TAFS claimed that when it issued the proposed buyout agreement, it was unable to confirm with ALS whether the payment was for Big Boi's open invoice. TAFS had also received a partial payment of $1,600 from Geodis on June 16, 2022, but TAFS did not apply the payment to Big Boi's account because payments were paused while the proposed buyout was pending.

On June 17, 2022, RoadEx emailed TAFS with documents that it stated showed the ALS and Geodis payments had been made. RoadEx requested that TAFS apply the payments, asked for an explanation of the miscellaneous fee, and asked TAFS to remove the handling fee. TAFS responded that the handling fee was its charge for pursuing the buyout agreement. TAFS typically calculated handling fees based on an estimate of 20 percent of the outstanding balance of a client's account, with a minimum fee of $2,000.

On July 1, 2022, TAFS sent another buyout calculation to Big Boi and RoadEx with the same $6,747.12 buyout total. On July 6, 2022, TAFS sent an email to Big Boi stating that the proposed buyout expired that day and TAFS would charge an additional $2,500 fee if it had to prepare another proposed buyout agreement. TAFS clarified that the $2,500 charge would be on top of the charges reflected in the buyout calculation. TAFS charged an additional $2,500 fee if a buyout agreement was not executed within five business days. TAFS and RoadEx never completed the proposed buyout.

Ultimately, Big Boi and Ashburn sued TAFS for damages, alleging tortious interference, fraud by promise of future events, fraud, and fraud by silence. In count I, Big Boi alleged TAFS tortiously interfered with its expected business relationship with RoadEx by failing to issue a release from Big Boi's obligations under the FSA and for misconduct during negotiations with RoadEx to buy out Big Boi's remaining balance with TAFS. In count II, Big Boi alleged fraud by promise of future events based on

4

alleged promises that the FSA would terminate if Big Boi gave proper notice and that TAFS would allow RoadEx to accomplish a buyout. In count III, Big Boi alleged fraud based on TAFS allegedly misrepresenting the amount of Big Boi's outstanding obligations after the FSA expired. In count IV, Big Boi alleged fraud by silence based on TAFS allegedly withholding the true value of Big Boi's outstanding account balance.

On October 14, 2022, TAFS sent Big Boi a residual detail report showing a $1,047.12 balance on Big Boi's account. Big Boi satisfied its account obligations on November 1, 2022, by submitting a $1,047.12 payment to TAFS. Big Boi did not pay a handling fee. On February 7, 2023, Big Boi entered a new FSA with Flat Rate Funding Group.

TAFS moved for summary judgment, claiming Big Boi could not show recoverable damages; Ashburn was not a proper party; Big Boi could not establish the elements for its tort claims; and Big Boi's claims improperly sounded in tort. The district court granted TAFS's motion for summary judgment. Big Boi now appeals.

ANALYSIS

*The district court did not err in granting TAFS's motion for summary judgment by finding Big Boi could not show recoverable damages.*

*Preservation*

On appeal, Big Boi contends there was sufficient evidence for the jury to find damages. It argues the district court improperly engaged in a credibility assessment in rejecting Ashburn's affidavit alleging Big Boi's operating costs were half of its gross revenue. Big Boi asserts it can show $25,938.97 in damages based on Ashburn's estimate

5

of expenses and Big Boi's net profits in the last seven months before the FSA expired compared to the seven months afterward.

TAFS responds that Big Boi raises its damages theory based on net profits for the first time on appeal and fails to explain why its new damages theory should be considered.

At the district court, Big Boi calculated its damages based on gross revenue rather than net profits. In its motion for summary judgment, TAFS challenged Big Boi's damages calculation as improperly based on gross revenue instead of net profits. Big Boi responded that the measure of damages goes to the weight of the evidence, claiming the proper damages calculation is a question for the jury. At the summary judgment hearing, Big Boi reiterated its gross revenue damages theory and argued that Kansas law had not established that net profits was the proper measure. The district court found net profits was the proper measure of damages and Big Boi's calculation based on gross revenue was "inherently unreliable" with no evidence of business expenses and operating costs.

The record shows that Big Boi asserts its damages calculation based on net profits for the first time on appeal. A party generally may not raise an issue on appeal that was not raised at the district court. *143rd Street Investors v. Board of Johnson County Comm'rs*, 292 Kan. 690, 706, 259 P.3d 644 (2011). Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36) requires an appellant to provide a "pinpoint reference to the location in the record on appeal where the issue was raised and ruled on. If the issue was not raised below, there must be an explanation why the issue is properly before the court."

Big Boi does not acknowledge that it provides a damages calculation based on net profits for the first time on appeal. It does not assert any exceptions to the preservation rule. Kansas courts do not appear to have addressed preservation issues where a new damages calculation was asserted on appeal, though other courts have declined to

6

consider unpreserved damages theories. See *Glassman v. Safeco Ins. Co. of America*, 90 Cal. App. 5th 1281, 1326-27, 307 Cal. Rptr. 3d 863 (2023) (noting "a party cannot assert one measure of damages in the trial court and another measure on appeal" and declining to address issue); *Nordhem v. Harry's Cafe, Inc.*, 175 Ill. App. 3d 392, 399, 529 N.E.2d 988 (1988) (finding appellant waived net profits damages theory at trial court and could not raise it on appeal). Therefore, because Big Boi only pursued damages based on gross revenue at the district court, we decline to consider Big Boi's new damages calculation based on net profits for the first time on appeal.

*Standard of Review*

When determining whether a material factual dispute exists on a summary judgment ruling, appellate courts determine whether "reasonable minds could differ as to the conclusions drawn from the evidence . . . . Appellate review of the legal effect of undisputed facts is de novo." *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 982, 453 P.3d 304 (2019).

*Discussion*

   *A. Arguments and District Court Ruling*

Big Boi's four tort claims—tortious interference with prospective business advantage or relationship, fraud by future promise, fraud, and fraud by silence—all require damages as an element. See PIK Civ. 4th 124.92 (2020 Supp.); PIK Civ. 4th 127.40 (2024 Supp.); PIK Civ. 4th 127.41 (2024 Supp.); PIK Civ. 4th 127.42 (2012 Supp.).

To recover damages, there must be a reasonable basis for computation that allows a fact-finder to arrive at an approximate estimate of the damages. Claims for damages

that are conjectural and speculative cannot form a sound basis for an award. *Peterson v. Ferrell*, 302 Kan. 99, 106-07, 349 P.3d 1269 (2015).

Big Boi argues that there was sufficient evidence for a jury to find damages. It asserts the district court improperly assessed credibility and weighed the evidence in rejecting Ashburn's affidavit wherein he claimed Big Boi's operating costs were about half of gross revenues. Big Boi claims Ashburn was competent to testify about Big Boi's revenues and costs. Big Boi contends: "The question is not whether the calculation is correct at this juncture, but whether there is admissible evidence to support some calculation." Using Ashburn's estimate of operating costs being 50 percent of revenues, Big Boi suggests it can show $25,938.97 in damages based on a net profits comparison between the last seven months of the FSA term and the seven months following the FSA's expiration.

TAFS counters that Big Boi's damages theory and evidence of damages were legally insufficient to survive summary judgment. TAFS contends Kansas law requires damages be calculated by net profits rather than gross revenues and asserts Big Boi did not present admissible evidence of its costs and expenses. TAFS suggests Big Boi cannot meet its burden to show damages "by presenting an admittedly improper method of calculating [its] damages." TAFS also contends that, rather than weighing credibility, the district court found Ashburn's affidavit inadmissible as self-serving and lacking foundation. TAFS asserts Ashburn's affidavit was conclusory and self-serving, rendering it insufficient to create a genuine issue of material fact. TAFS argues that even if the affidavit is considered, it is insufficient to avoid summary judgment. TAFS also claims Big Boi has waived any challenge to the district court's finding that, without an expert or reliable financial information, Big Boi could not show causation between its alleged damages and TAFS's conduct.

Before the district court, Big Boi and Ashburn claimed damages by calculating Big Boi's gross revenues without considering operating costs:

"The average of my gross monthly revenue June 1, 2022 to April 30, 2023 subtracted from the average of my gross monthly revenue from January 1, 2022 to April 30, 2022, then multiplied by eleven (i.e. the eleven full calendar months from the date my contract with TAFS ended to the end of April 2023) equals $116,785.33."

In his corporate representative deposition, Ashburn testified that he calculated his gross revenues based on his bank statements. Ashburn acknowledged that his bank statements may have included personal expenses. Ashburn's bank statements showed comingled business and personal deposits and expenses, including transactions for FanDuel, CashApp, a pet store, and restaurants. Ashburn also testified that he paid cash "for fuel and other expenses." Ashburn did not keep "a ledger or book" to keep track of expenses; he claimed he only kept receipts.

To their memorandum in opposition to summary judgment, Big Boi and Ashburn attached an affidavit by Ashburn stating: "During the time I was factoring with TAFS, my expenses from trucking operations generally amounted to approximately half of gross revenues in any given month." To its reply in support of summary judgment, TAFS attached Big Boi's 2021 tax return as an exhibit. The tax return showed Big Boi had $105,840 in gross profits with $119,222 in expenses, meaning the company operated at a loss of $13,382.

In its summary judgment ruling, the district court found the proper measure of damages was net profits, concluding: "Because Big Boi provided no business expenses in its damage calculation, it cannot recover the only category of damages available to it—economic damages." The court found the comingled personal and business transactions in Big Boi's bank statements, Big Boi's payment for some expenses in cash, and its lack of

an expenses ledger "make the gross revenue basis for calculating damages inherently unreliable." The district court also rejected Ashburn's affidavit claiming Big Boi's expenses were half of gross revenues:

> "The only evidence presented in support of Big Boi's expenses is a self-serving affidavit by Ashburn estimating that Big Boi's expenses are 50% of gross revenue. The foundation for this opinion, however, is unsupported by any of the financial records that were required to be produced in discovery and, further, are contradicted by Big Boi's tax records showing that it operated at a loss.
>
> "A non-moving party cannot avoid summary judgment by presenting a sham affidavit that is a transparent attempt to avoid summary judgment by unsupported evidence. . . . Plaintiff alludes to expenses beyond Ashburn's affidavit but fails to include the same. A party may not avoid summary judgment on the hope that something may develop later at trial. . . . In this case, a jury could do nothing but improperly speculate as to plaintiffs' alleged damages."

The district court also noted that Big Boi "existed for a short period of time" and claimed lost future business damages. The court stated:

> "But even if the Court allowed speculative expenses as a basis for damages, this would not meet the burden to demonstrate damages with reasonable certainty. This would require Big Boi to, somehow, connect TAFS'[s] alleged conduct to the overall failure of its business. Without an expert or even reliable financial records beyond its own bank account, the same deficiencies exist. Lost profits damages for a new business cannot be established through one person's testimony."

Therefore, the court concluded Big Boi could not show damages with reasonable certainty and found summary judgment "appropriate on all of Big Boi's claims that assert damages as an element of its claims."

10

B. *There is No Genuine Issue of Material Fact*

1.        *Proper Measure of Damages*

In *Intellisports LLC v. Fitzgerald*, No. 90,397, 2004 WL 794458, at *4 (Kan. App. 2004) (unpublished opinion), another panel of this court stated:

> "A claim for lost profits must be supported by some financial data which permit an estimate of the actual loss to be made with reasonable certitude and exactness. Further, the proper method of calculating damages for lost profits is on the basis of lost net profits and not gross profits."

The district court cited *Intellisports* and cases from other states in finding net profits was the proper measure of damages. Other courts have also required lost net profits as the basis for a lost profits award. See *ACI Worldwide Corp. v. Baldwin Hackett & Meeks, Inc.*, 296 Neb. 818, 875, 896 N.W.2d 156 (2017) (citing prior holding that "a plaintiff has not presented sufficient evidence of lost profits where he or she presents only evidence of gross profits and does not present evidence of any costs"); *Sumna Real Estate Group, Inc. v. Horst*, 303 Or. App. 415, 423, 464 P.3d 483 (2020) (noting lost profits evidence must be based on net profits).

This principle adheres to the discussion of lost profits in 22 Am. Jur. 2d, Damages § 722: "Since lost profits, and not lost revenue, is the proper measure of damage to a business, proof of the gross receipts of the business, standing alone, is not sufficient. Costs must also be taken into account."

## 2. *Ashburn's Affidavit*

Ashburn's affidavit alleged Big Boi's costs and expenses were half of gross revenue during the months Big Boi worked with TAFS, though the district court rejected the affidavit as self-serving, lacking foundation, and contrary to the evidence.

"A supporting or opposing affidavit or declaration must be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant or declarant is competent to testify on the matters stated." K.S.A. 2024 Supp. 60-256(e)(1). "Flimsy or transparent allegations [on summary judgment] are insufficient to sustain a justiciable controversy requiring the submission thereof to the trier of facts." *In re Estate of Mullin*, 201 Kan. 756, 761, 443 P.2d 331 (1968). "'[C]onclusory and self-serving affidavits are not sufficient.'" *Deters v. Nemaha-Marshall Electric Cooperative Ass'n*, 56 Kan. App. 2d 1170, 1185, 443 P.3d 1086 (2019).

*Deters* involved a negligence suit for failed electrical appliances. Nemaha-Marshall claimed it last worked on the appliance at issue in January 2000, rendering the Deters' suit barred by the statute of repose. The Deters responded with an affidavit by Stephen Deters claiming to have seen Nemaha-Marshall workers working on the appliance in February 2007 and saw the workers "check[] the connections" in September 2007, which Stephen took as the workers checking the appliance. 56 Kan. App. 2d at 1184.

The *Deters* panel found Stephen's affidavit insufficient to establish a genuine issue of material fact. The panel found the affidavit's allegations "flimsy and transparent," rendering them insufficient to establish a fact question for the jury. 56 Kan. App. 2d at 1185.

Here, Ashburn's affidavit claimed Big Boi's costs and expenses "generally amounted to approximately half of gross revenues in any given month" while Big Boi worked with TAFS. Big Boi did not provide any documentation to support that estimate. The estimate contradicts Big Boi's tax records showing that Big Boi operated at a loss in 2021. Given that Ashburn's estimate was general and unsupported by any evidence, the affidavit in this case appears comparable to *Deters*. Therefore, we find Ashburn's claim in the affidavit to be the kind of "'[f]limsy or transparent'" allegation that is insufficient to establish a genuine issue of material fact. See *In re Estate of Mullin*, 201 Kan. at 761. Accordingly, the district court did not abuse its discretion in finding Ashburn's affidavit inadmissible and declining to consider it.

### C. *Judgment as a Matter of Law is Proper*

Big Boi cites *Ultimate Chem. Co. v. Surface Transp. Intn'l, Inc.*, 232 Kan. 727, 729-30, 658 P.2d 1008 (1983), to argue that owners are competent to testify about their property. TAFS correctly notes that *Ultimate Chemical* involved a property owner testifying to the fair market value of damaged equipment, rather than a business owner testifying to the business' lost profits.

TAFS reiterates its argument from the district court that lost profits damages for new businesses cannot be established with one person's testimony, relying on *Kelley Metal Trading Co. v. Al-Jon/United, Inc.*, 877 F. Supp. 1478 (D. Kan. 1995). In *Kelley*, Kelley established his business in June 1990. In 1992, he sued for fraud and breach of warranty claims. At trial, the district court did not allow the jury to consider lost profits, finding the evidence insufficient to prove such damages. Ruling on Kelley's motion for a new trial, the court found no error in precluding the jury's consideration of lost profits. The court explained the only lost profits evidence was Kelley's testimony, which the court concluded was "too speculative given the fact that the business was new and there was no reasonable basis from which to determine lost profits." 877 F. Supp. at 1485.

In finding Kelley's testimony too speculative to establish lost profits, the court cited *Butler v. Westgate State Bank*, 226 Kan. 581, 583-84, 602 P.2d 1276 (1979), and *Sullivan v. Sproule*, 176 Kan. 274, 278-79, 269 P.2d 1015 (1954). *Kelley Metal*, 877 F. Supp. at 1484-85. In *Butler*, the business had operated in the relevant area for 12 months before the owner terminated operations. The owner estimated his lost profits based on his average profits over the prior six years in a different area. The Supreme Court found the lost profits evidence too speculative, because the business manager did not testify about how long he was in business in the area used to calculate his damages or about his profits from the business' first year in that area. The court noted that "the future operator's capability in running the business" was a factor in determining lost profits damages, and the evidence showed the business was losing money before the owner took over. 226 Kan. at 584. Therefore, the court concluded the evidence could not establish lost profits with reasonable certainty. 226 Kan. at 584.

In *Sullivan*, the defendants appealed the overruling of a demurrer to Sullivan's petition, claiming the contract at issue was unenforceable because Sullivan's claimed damages were too speculative. Sullivan claimed damages based on "a percentage of the gross receipts, less taxes." 176 Kan. at 278. The Supreme Court stated it was "presently concerned with the alleged facts that the theatre business in question had been established, was in operation, and had been taking in gross receipts . . . ." 176 Kan. at 278. The court found Sullivan could recover anticipated profits damages if he could show "the business had been in successful operation for such time as to give it permanency and that it was making earnings which could be reasonably ascertained, and appellee was denied his interest by the wrongful acts of appellants . . . ." 176 Kan. at 279. The court concluded that "where the business is not a new or untried one and has been established to such an extent that a safe basis can be found on which to estimate them, anticipated profits may be allowed as damages on breach of the contract." 176 Kan. at 279.

14

Here, the only evidence of Big Boi's profitability was Ashburn's affidavit claiming expenses were half of gross revenues when Big Boi worked with TAFS and Big Boi's tax return showing that it operated at a loss in 2021. Even if Ashburn's affidavit is considered, Ashburn's estimate of expenses is very general and only applied to the time Big Boi worked with TAFS. The affidavit did not include an estimate of expenses after the FSA expired. Big Boi's bank statements showed comingled personal and business expenses. Ashburn also admitted that he paid some expenses in cash and did not keep an expenses ledger. Ashburn established Big Boi in May 2021. Big Boi went out of business in May 2023 due to financial struggles.

Following *Butler* and *Sullivan*, Big Boi has failed to show evidence suggesting either past or future profitably. The company operated for only two years, during which the evidence showed it struggled financially. Given that Big Boi was a new business with little to no evidence of profitability, the district court did not err in finding, as a matter of law, that Big Boi's lost profits damages were too speculative for a jury to estimate damages with reasonable certainty. Because each of Big Boi's claims required damages as an element, this issue is dispositive, and the district court did not err in concluding all of the claims failed as a matter of law. See *Strategic Energy Income Fund III, L.P. v. Stephens Energy Group, LLC*, No. 126,026, 2024 WL 3634308, at *12 (Kan. App. 2024) (unpublished opinion) (finding "no credible evidence" to support damages theory, therefore all claims requiring damages failed). Accordingly, we find the district court did not err in granting summary judgment to TAFS.

Affirmed.