No. 46,307

INTERCONTINENTAL LEASING, INC., *Appellee*, v. GARY L. LEHR, ROBERT A. ALLEN, FOREST S. TENNANT, SR., C. C. RAINEY, GEORGE STUCKEY, JACK ERWIN, P. A. SCHNEIDER, JR., ARTHUR H. SNYDER, W. T. BRASHEAR, HAROLD SELLERS, *Appellants*.

(495 P. 2d 900)

Opinion filed April 8, 1972.

*John F. Hayes,* of Gilliland, Hayes and Goering, of Hutchinson, argued the cause, and *Arthur H. Snyder,* of Snyder and Orcutt, also of Hutchinson, was with him on the brief for the appellants.

*Richard W. Stavely,* of Wichita, argued the cause, and *William B. Swearer,* of Martindell, Carey, Hunter and Dunn, of Hutchinson, was with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: The defendants appeal from a summary judgment entered against them in the sum of $16,773.48.

The background facts were stipulated by the parties in a pre-trial order. The defendants organized a retail meat corporation, Colonial Meats, Inc. (Colonial). The corporation was short lived. It acquired its business tools and equipment by executing a written leasing agreement with Intercontinental Leasing, Inc. (Intercontinental). The leasing agreement was dated January 21, 1966. Contemporaneously the defendants, being the incorporators, stockholders, directors or officers of Colonial, entered into a written guaranty agreement as an inducement to Intercontinental to purchase and deliver the tools and equipment to Colonial. The leasing agreement covered a term of five years and required monthly payments totaling $23,808.60. Colonial paid eight monthly installments and then defaulted. Five

months later, no further payments having been made, Intercontinental repossessed the tools and equipment pursuant to default provisions in the leasing agreement. Repossession occurred on March 11, 1967, without objection from either Colonial or the defendants. Colonial became insolvent and no steps have been taken to wind up its business or pay its creditors. The tools and equipment were sold on April 25, 1967, at public auction. Expenses of repossession and sale were incurred and paid by Intercontinental. These included storage rentals, a sale commission and a delinquent personal property tax warrant. Intercontinental filed this action against the defendants as guarantors to recover the difference between the gross unpaid rentals reserved in the five year leasing agreement and the net proceeds of the sale.

The issues as defined in the pre-trial order were:

"4. The remaining issues to be determined are:

"(a) Whether expenses of repossession and sale are properly allowable as a deduction from the proceeds of sale of the leased equipment; and

"(b) If expenses of repossession and sale are properly allowable as a deduction from the proceeds of sale of the leased equipment: (i) whether Plaintiff had a duty to make a reasonable effort to sell the leased equipment for the best price obtainable and, if so, whether it exercised such duty; (ii) whether such expenses were reasonable; and (iii) in what amount are expenses of sale allowable as a deduction?

"(c) Whether the Defendants are entitled to credit for the leased equipment shown on page A-1 of Lease No. 707 attached hereto which was not sold by Plaintiff at the public auction held April 25, 1967, and, if so, in what amount?

"(d) Whether the proceeds from the sale of the leased equipment were properly applied by Plaintiff?

"(e) Whether Defendants are entitled to credit for that portion of the difference between Plaintiff's cost of the leased equipment and the rental charge therefor?

"(f) Whether Plaintiff is entitled to interest from April 25, 1967, and if so, whether the rate of interest if [sic] 10% per annum?

"(g) Whether Plaintiff is entitled to recover the lessor's reversion in the leased equipment shown in Lease No. 707 in the amount of $1,725.27 from the Defendants?

"(h) Was the transaction between the parties actually a conditional sale of equipment or a lease of equipment?

"(i) Is the action brought by the Plaintiff, (i) for recovery of rent or (ii) for damages for breach of contract?

"(j) If the action is on a lease contract, did the plaintiff effectively cancel the lease contract by seizing the personal property covered thereby and subsequently selling the same?

"(k) By reason of the Guaranty referred to in 3. (d), did the Defendants agree to pay any taxes?

"(l) By reason of said Guaranty did the Defendants agree to pay any rent to the landlord or any commission on the sale of the property by Plaintiff?

"(m) Do the Defendants owe Plaintiff for loss of rent for the period to April 25, 1967, less amount paid, or what loss of rent would there be if Plaintiff had re-rented the property to another, or do they owe damages for breach of contract by Colonial Meats, Inc.?

"(n) In the event that Defendants are liable for rentals over the five-year term of the lease, then, in such event, are the Defendants entitled to the possession and use of the personal property covered by the lease?

"5. The documentary evidence is Lease No. 707 and the Guaranty.

"6. Each party shall advise the other party as to the names of all witnesses to be called by such party at least ten (10) days prior to trial; and no other witnesses will be permitted to testify except for rebuttal and impeachment purposes, or, by order of the Court.

"7. Plaintiff contends that all issues set forth in Paragraph 4 of this pre-trial order (except those issues set forth in sub-paragraph (b) of paragraph 4 and the amount of any credit for leased equipment set forth in sub-paragraph (c) of paragraph 4, which issues plaintiff concedes to be of a factual nature) are issues of law and not properly triable to a jury. Defendants contend that all issues set forth in paragraph 4 of this pre-trial order are issues of fact and properly triable to jury; and Defendants demand a jury trial on all issues.

"The Court should determine: (1) whether Defendants are entitled to a jury trial on any issue or issues in view of defendants' failure to demand a jury trial pursuant to K. S. A. 60-238; (2) if the Court determines that Defendants are entitled to a jury trial on any issue or issues, then the Court should determine which issue or issues are properly triable to a jury; and (3) any issue or issues which are not properly triable to a jury should be determined by the Court prior to the submission of any issue to a jury."

After abortive attempts at an intermediate appeal and a direct appeal a further stipulation of the parties was made in the trial court. The parties stipulated the expenses of repossession and sale previously claimed by Intercontinental were incurred, were reasonable in amount and were necessary in order to conduct the sale.

With the lawsuit in this posture the plaintiff filed a motion for summary judgment. The trial court in response to the motion construed the terms of the two contemporaneous written instruments, found there was no genuine issue of material fact remaining and entered judgment for plaintiff.

Before discussing the merits of this appeal pertinent parts of the agreements should be mentioned or quoted. The leasing agreement required monthly payments of $396.81 over a term of five years. The agreement contained no option to purchase. Title to the property remained in Intercontinental. At the end of the initial five year

term the agreement was renewable by payment of an annual renewal rental of $517.58. Other pertinent parts of the leasing agreement provide:

"17. INSURANCE; LIENS; TAXES. Lessee shall provide and maintain insurance against loss, theft, damage or destruction of the equipment in an amount not less than the total rent payable hereunder, with loss payable to lessor. Each policy shall expressly provide that said insurance as to lessor and its assigns shall not be invalidated by any act, omission or neglect of lessee. Lessor may apply the proceeds of said insurance to replace or repair the equipment and/or to satisfy lessee's obligations hereunder. At lessor's request, lessee shall furnish proof of said insurance.

"Lessee shall keep the equipment free and clear of all levies, liens and encumbrances. Lessee shall pay all charges and taxes (local, state and federal) which may now or hereafter be imposed upon the ownership, leasing, rental, sale, purchase, possession or use of the equipment, excluding however, all taxes on or measured by lessor's income.

"If lessee fails to procure or maintain said insurance or to pay said charges and taxes, lessor shall have the right, but shall not be obligated, to effect such insurance, or pay said charges and taxes. In that event, lessee shall repay to lessor the cost thereof with the next payment of rent.

. . . . . . . . . . .

"20. LATE PAYMENTS. Should lessee fail to pay when due any part of the rent herein reserved or any other sum required to be paid to lessor, lessee shall pay to lessor interest on such delinquent payment from the due date thereof until paid at the rate of ten percent (10%) per annum.

"21. DEFAULT. If lessee fails to pay any rent or other amount herein provided within ten (10) days after the same is due and payable, or if lessee fails to perform any other provisions hereof within ten (10) days after lessor shall have demanded in writing performance thereof, or if any proceeding in bankruptcy, receivership or insolvency shall be commenced by or against lessee or its property, or if lessee makes any assignment for the benefit of its creditors, lessor shall have the right, but shall not be obligated, to exercise any one or more of the following remedies: (a) to sue for and recover all rents and other amounts then due or thereafter accruing under this lease; (b) to take possession of any or all of the equipment, wherever it may be located, without demand or notice, without any court order or other process of law, and without incurring any liability to lessee for any damages occasioned by such taking of possession; (c) to sell any or all of the equipment at public or private sale for cash or on credit and to recover from lessee all costs of taking possession, storing, repairing and selling the equipment, an amount equal to ten percent (10%) of the actual cost to lessor of the equipment sold, and the unpaid balance of the total rent for the initial term of this lease attributable to the equipment sold, less the net proceeds of such sale; (d) to terminate this lease as to any or all items of equipment; (e) in the event lessor elects to terminate this lease as to any or all items of equipment, to recover from lessee as to each item subject to said termination, of the excess, if any, of the amount of rent reserved herein for said items for the balance of the term hereof over the

then reasonable rental value of said item for the same period of time; (f) to pursue any other remedy now on [sic] hereafter existing at law or in equity.

"Notwithstanding any such action that lessor may take, including taking possession of any or all of the equipment, lessee shall remain liable for the full performance of all its obligations hereunder, provided, however, that if lessor in writing terminates this lease, as to any item of equipment, lessee shall not be liable for rent in respect of such item accruing after the date of such termination.

"In addition to the foregoing, lessee shall pay lessor all costs and expenses, including reasonable attorneys' fees, incurred by lessor in exercising any of its rights or remedies hereunder."

The guaranty agreement, omitting the signatures of the defendants, is as follows:

"FOR VALUE RECEIVED and in consideration of, and as an inducement to, INTERCONTINENTAL LEASING, INC., hereinafter referred to as LESSOR, leasing certain equipment to Colonial Meats, Inc. hereinafter referred to as LESSEE, by written lease dated the 21st day of January, 1966;

"THE UNDERSIGNED unconditionally promises and guarantees the prompt payment by LESSEE to LESSOR, when due, of all monthly installments of rent under said lease.

"THE UNDERSIGNED hereby waives notice of non-payment, non-performance and protest and expressly agrees that the validity of this agreement and his obligations hereunder shall in no wise be terminated, affected or impaired by reason of the LESSOR's assertion against the LESSEE of any of the rights or remedies reserved to LESSOR under provisions of said lease. LESSOR shall be under no obligation to proceed first against LESSEE or against any collateral security which the lessor may hold nor to exhaust any such remedies before proceeding hereunder against the UNDERSIGNED. No extension to the LESSEE of the time for payment of rent shall release or discharge the UNDERSIGNED from liability under this guaranty; nor shall any changes or modifications of the lease agreement, or the equipment leased thereby, nor any assignment thereof have the effect of releasing or discharging the UNDERSIGNED.

"DATED at Hutchinson, Kansas this 21st day of January, 1966."

We have examined the tortured progress of this case as it appears in the bifurcated record presented to this court. The original record contains eight claims of error under the Statement of Points. The supplemental record lists two points and attempts therein to include by reference all points contained in the abortive appeal previously dismissed by this court. Appellants' brief contains a list of three claims of error in a Statement of Points but the argument set forth in appellants' brief speaks to one point only. Serious procedural defects in the record have been raised on motion to dismiss this appeal under our rules. We elect to disregard these procedural defects and answer the one point briefed and argued.

Points neither briefed nor argued on appeal will be deemed abandoned. (See Hatcher's Kansas Digest [Rev. Ed. Perm. Supp.] Vols. 1-3, Appeal and Error, § 184.)

Appellants list six matters in their brief which they claim should have been submitted for jury determination. They argue the trial court erred in determining the issues as matters of law on the motion for summary judgment.

Before examining this contention it might be well to review certain general principles of contract law. When there is no substantial question of material fact remaining in a case the interpretation and construction of a contract becomes a question of law for the court to determine. (*McAfee v. City of Garnett*, 205 Kan. 269, Syl. ¶ 6, 469 P. 2d 295.) That being so, the construction of the terms and the effect of a written instrument can be determined as a matter of law on a motion for summary judgment. (*West v. Prairie State Bank*, 200 Kan. 263, Syl. ¶ 5, 436 P. 2d 402.)

These rules of law apply in the present case for the existence and validity of the two contemporaneous contracts were admitted by the parties in the court below. Now let us examine the six matters which appellants claim were questions to be submitted for jury determination.

In entering summary judgment the trial court determined the six matters raised by appellants as follows: (1) That the leasing agreement was a lease and not a conditional sale contract; (2) That the guaranty agreement was not terminated or impaired when the property was repossessed and sold; (3) That neither Colonial nor the defendants had a right under the leasing agreement to require the equipment be re-rented; (4) That the leasing agreement provided for payment of ten percent (10%) interest per annum on delinquent and accelerated payments due; (5) That the deduction of sale expenses from the gross sale receipts was authorized in the leasing agreement, and (6) That the obligations arising from guaranty agreement did not terminate when Intercontinental repossessed and sold the equipment.

These are the six issues which appellants now contend should have been submitted to a jury for determination. These six issues necessarily depend upon an interpretation and construction of the wording in the two written instruments. They were properly resolved as questions of law by the trial court. None were issues to be resolved by a jury. They were questions of law and could be

determined on the motion for summary judgment. The appellants were not entitled to a jury trial on these six questions of law. Since this is the only point presented and argued in appellants' brief we consider no others.

The judgment is affirmed.