No. 47,034

THOMAS M. VICKERS, d/b/a THOMAS VICKERS PRODUCTIONS, *Appellant*, v. WICHITA STATE UNIVERSITY, Wichita, Kansas; BRADLEY UNIVERSITY, Peoria, Illinois; CINCINNATI UNIVERSITY, Cincinnati, Ohio; TULSA UNIVERSITY, Tulsa, Oklahoma; DRAKE UNIVERSITY, Des Moines, Iowa; NORTH TEXAS STATE UNIVERSITY, Denton, Texas; MEMPHIS STATE UNIVERSITY, Memphis, Tennessee; ST. LOUIS UNIVERSITY, St. Louis, Missouri; and UNIVERSITY OF LOUISVILLE, Louisville, Kentucky, *Appellees.*

(518 P. 2d 512)

Opinion filed January 26, 1974.

*Thomas C. Triplett,* of Martin, Pringle, Schell & Fair, of Wichita, argued the cause and was on the brief for appellant.

*John J. Kitchin,* of Swanson, Midgley, Eager, Gangwere & Thurlo, of Kansas City, Missouri, and *James W. Sargent,* of Sargent & Klenda, of Wichita, argued the cause, and *William Tinker, Sr.,* of McDonald, Tinker, Skaer, Quinn and Herrington, of Wichita, was with them on the brief for appellees.

The opinion of the court was delivered by

FATZER, C. J.: This appeal arises from an action to recover for loss of future profits resulting from breach of a contract. The facts pertinent to the limited issue may be briefly stated.

The defendants, constituting the Missouri Valley Conference, initially contracted with television station KTVH, Channel 12, Wichita, Kansas, for the televising of conference basketball games.

KTVH assigned the contract rights to televise the games for the 1966-67 season to plaintiff, Thomas M. Vickers. On July 20, 1967, Vickers executed a contract with defendants to televise the games for the 1967-68 basketball season. The contract set out in detail the parties' rights and obligations, and contained a provision granting Vickers the right of first refusal as to the television rights for the 1969-70 season. Specifically, the provision stated:

"Further, Tom Vickers Productions, 520 East William, Wichita, Kansas, shall have the right of first refusal for any Missouri Valley Conference basketball television plan offered by the Conference for the 1969-70 Season."

A meeting to discuss a contract for the television rights for the 1969-70 season was held in Kansas City, Missouri, on May 29, 1969. Present at that meeting were Vickers, Norvall Neve, Commissioner of the Missouri Valley Conference, and Jack Munley, a television broadcaster for appellant. At that meeting, Vickers requested certain changes in the new contract and at that time was informed by Neve that no other party was interested in the television rights. However, the record indicates there had been some discussion between Neve and Edward Einhorn, president of TVS, Inc. regarding the 1969-70 television rights in the early months of 1969.

A written agreement was prepared and sent to Vickers in June, 1969. That agreement was comparable to the previous contract between Vickers and the Missouri Valley Conference. It granted Vickers the television rights for "9 or 10" games for each of the 1969-70, 1970-71 and 1971-72 seasons. A provision required the contract be executed by June 21, 1969, and returned with a $5,000 prepayment. In addition to the contract, Neve sent Vickers a letter which stated:

"Enclosed is the television contract the committee asked me to send to you.
"There are some items you will not like. I have underlined the changes so that they are easy to locate. I don't know how to advise you to go about getting adjustments in the contract, but if you wish, call me."

Further discussions as to the contract sent to Vickers were held in Wichita, Kansas, on July 1, 1969. At that meeting the parties were unable to reach an agreement regarding proposed changes by Vickers in the contract for the 1969-70, 1970-71 and 1971-72 seasons. Accordingly, no contract was executed by the parties.

Immediately following the meeting between Vickers and Neve, Neve mailed a written contract for the television rights to Edward Einhorn. Einhorn modified and signed the contract on July 15,

1969, and returned it to the office of the Commissioner of the Missouri Valley Conference. The modification by Einhorn to the contract was deleted by a subsequent agreement between the parties. The contract between the Missouri Valley Conference and TVS, Inc., while similar in many respects to the contract offered by the appellees to Vickers, contained certain differing provisions many of which were requested by Vickers. A discussion of those differences is not necessary to the disposition of the limited issue before us. It is sufficient to state there were significant differences between the two contracts.

It was stipulated that at no time was a contract with the same terms as those contained in the TVS contract ever offered to Vickers.

An action was commenced for damages based on breach of the contract giving the right of first refusal for any Missouri Valley Conference basketball television plan offered by the Conference for the 1969-70 season to Tom Vickers Productions. Plaintiff based his claim for damages on loss of profits.

During the presentation of plaintiff's case an objection was made to plaintiff's evidence and the objection was sustained. It was suggested by Vickers' counsel that the ruling would preclude the plaintiff from going forward with any further proof in the case. The defendants then moved for a directed verdict which was sustained. The plaintiff has appealed.

Four specifications of error were alleged initially by appellant, however, in view of the fact appellant briefed and argued only one alleged error, he is considered to have abandoned the other grounds. (*Scrinopskie v. Arthur Murray, Inc.,* 195 Kan. 278, 403 P. 2d 1001; *Vaughan v. Hornaman,* 195 Kan. 291, 403 P. 2d 948; *Intercontinental Leasing, Inc. v. Lehr,* 209 Kan. 132, 495 P. 2d 900.) The limited issue now before us is whether the district court erred in sustaining defendants' motion for a directed verdict because plaintiff had not conducted a profitable operation for a sufficient period of time to ascertain with reasonable certainty loss of future profits.

There is a dispute as to just what was the posture of the case at the time the ruling was made on the admissibility of the evidence and the order directing a verdict. We shall consider the record.

Appellant's counsel was examining a witness in connection with an exhibit purporting to show loss of future profits. Objection was

first made by appellees on the basis there had not been a proper foundation laid for questions relating to appellant's exhibit. The objection was overruled.

Later, a further objection by appellees was made and considered out of the presence of the jury. One of appellees' arguments was as follows:

". . . [Y]ou have to have a track record first, and the undisputed testimony of Mr. Vickers, as well as all the other evidence to date, shows that in the two years he operated under the old contract (1968 and 1969 seasons) he had a loss each year no matter which profit schedule you look at, I think there was some questions about the amounts but they were still losses in operation under the old contract, and I think that is the most basic question here."

The district court stated:

"This is going to be the ruling of the Court, I am going to sustain the objection to this evidence and the Court will find that this business wasn't conducted for sufficient period of time to provide a basis of permanency from which future profits can reasonably be determined."

Counsel for appellant then announced his position as follows:

"The effect of that ruling would be to foreclose us from going forward with any further proof in the case, and the objection was brought up, objected to the witness testifying to the exhibit and ultimately to the admission of the exhibit. We haven't offered it yet, and there is no sense repeating our grounds here. The witness wouldn't be allowed to go further and when we offered the exhibit we wouldn't be allowed to get it in. That effectively concludes our case, and as I suggested yesterday evening, with that ruling I think the only thing left would be for the defendants to make a motion to dismiss the case."

Following the motion for a directed verdict, the district court concluded as follows:

"I am going to sustain the defendants' motions for directed verdict on any claims for damages for loss of future profits for the years 1970-71 and 1971-72, based on the fact that it is the Court's opinion that they have not proved entitlement to future profits, and I am going to sustain a motion for a directed verdict for the defendants for the year 1969-70 for the same reason."

We conclude, as did the appellant, the district court limited the evidence to a showing of past profits from which future profits might be ascertained. It should be noted that while the litigants are in disagreement as to the exact amount of Vickers' profits and losses, they agree he made a profit on the 1966-67 contract, and incurred losses on the 1967-68 and 1968-69 contracts.

The appellees' argument supports this conclusion. In their brief they argue:

"Contrary to plaintiff's assertion in his brief, the rule of law in this State is not only that there must be an existing business, but more importanly that the business has been successfully conducted for such a length of time so as to show from the past profits that future profits may be reasonably ascertained without resort to speculation or surmise. The reason for looking at the past existence of the business then is to see if it was successful and had in fact earned a profit."

This court follows the general rule that loss of profits resulting from a breach of contract may be recovered as damages when such profits are proved with reasonable certainty, and when they may reasonably be considered to have been within the contemplation of the parties. (*Rockey v. Bacon,* 205 Kan. 578, 470 P. 2d 804; *Telegraph Co. v. Crall,* 38 Kan. 679, 17 Pac. 309, reh. 39 Kan. 580, 18 Pac. 719.) Recovery for loss of profits caused by a breach of contract depends upon the facts and circumstances of each particular case. (*Peterson v. Bachar,* 193 Kan. 161, 392 P. 2d 853.)

This court first passed on the question in *Hoge v. Norton,* 22 Kan. 265 [* 374], where it is stated:

". . . It is not always easy to draw the line between profits that are a legitimate element of compensation, and those that are too remote, contingent, or uncertain. The old idea that profits were never recoverable was long since exploded; and now, even in actions on contract, it is said that they may be recovered when proximate and certain. 'The general rule is that the party injured by a breach of contract is entitled to recover all his damages, including gains prevented as well as losses sustained, provided they are certain and such as might naturally be expected to follow the breach. It is only uncertain and contingent profits, therefore, which the law excludes.' . . . Of course, absolute certainty is not attainable, as in casting up the figures of an account; but nevertheless there are certain laws of feeding and growth, well understood among cattle men, and whose results work out with sufficient certainty for business calculations and judicial investigations. The raising of cattle for market has been an extensive and oftimes profitable business in this state; and it would be strange if one could wrongfully take from the owner a herd of cattle, remove them to a poorer range, feed them on inferior food, and so treat them that during the growing season they do not grow at all, and then at its end return them, saying, as did the unfaithful servant in the parable who returned the single talent without increase, 'Lo! there thou hast that is thine,' and still be under no liability to respond in damages to such owner. We do not think the law so deficient. It seems clear that the owner is damaged, that the damages may be determined to a reasonable certainty, and that the wrong-doer is bound to make good the damages." (l. c. 269, 270 [* 379, 380].)

In *Brown v. Hadley,* 43 Kan. 267, 23 Pac. 492, this court had under consideration damages measured by loss of profits caused by breach of a contract to supply dairy cattle. The cattle were never delivered

and the business never got underway. In an action for damages it was stated:

"... this case presents an example of much more plain, definite, and easily ascertained damages. Buttermaking to supply the local market has been extensively engaged in ever since the settlement of the state, and we have no doubt but that the experience of dairymen can furnish estimates of the profits of cows kept for that purpose, that can be relied upon with the same degree of certainty that attends the result of all other ordinary business transactions of life. . . ." (l. c. 273.)

The fact that damages cannot be calculated with absolute exactness will not render them so uncertain as to preclude an assessment.

In *Gas Co. v. Glass Co.*, 56 Kan. 614, 44 Pac. 621, this court made a definite distinction between claims for profits derived from a new business and those derived from an established business. In the opinion it was said:

"Much reliance is placed upon the rulings of this court in the cases of *Hoge v. Norton,* supra; *Brown v. Hadley,* supra; and *Town Co. v. Lincoln,* supra. All of these cases are close to the border line dividing profits which may be allowed from those which should be rejected. In each of them, however, the business upon which profits were allowed was not new or untried, but had been established and carried on to such an extent in the community that a safe basis of calculation could be found. In *Hoge v. Norton,* supra, profits were estimated on the cattle business, which is well established in Kansas, and is carried on to such an extent that the laws of feeding and growth are well understood, and the results reasonably certain. In *Brown v. Hadley,* supra, the business was dairying, which, it was said, has been extensively engaged in ever since the settlement of the state, and that therefore the gains could be estimated by men of experience in that business with reasonable certainty. . . ." (l. c. 624.)

Again, in *States v. Durkin,* 65 Kan. 101, 68 Pac. 1091, this court denied recovery to a newly formed partnership for losses sustained on certain plumbing contracts. In examining the factual circumstances attending the partnership's business, this court stated:

"... It is not shown that they had any means or capital invested in the business other than their tools. Neither of them had prior thereto managed or carried on a similar business. Nor was it shown that they were capable of so managing this business as to make it earn a profit. *There was little of that class of business being done at that time, and little, if any, profit derived therefrom.* The plaintiffs' business lacked duration, permanency and recognition. It was an adventure, as distinguished from an established business. Its profits were speculative and remote, existing only in anticipation. The law, with all its vigor and energy in its effort to right wrongs and award damages for injuries sustained, may *not* enter into the domain of speculation or conjecture. . . ." (l. c. 103.) (Emphasis supplied.)

In *Outcault Adv. Co. v. Citizens Nat'l Bank*, 118 Kan. 328, 234 Pac. 988, this court said:

"It has been held that anticipated profits may be allowed as damages upon the breach of a contract where the business undertaken is not new or untried and has been established to such an extent that a safe basis can be found upon which to estimate such profits with reasonable certainty. . . ." (l. c. 331.)

Unquestionably, a method of establishing a loss of profits with reasonable certainty is by showing a history of past profitability. Past profitability of a particular business is not, however, the only method of proving lost future profits. The evidence necessary in establishing lost future profits with reasonable certainty "must depend in a large measure upon the circumstances of the particular case. . . ." (Requirements of Certainty of Proof of Lost Profits, 64 Harv. L. Rev. 317, 319.) Absolute certainty in proving loss of future profits is not required. (22 Am. Jur. 2d, Damages, § 172.) What is required is that the court or jury be guided by some rational standard. (*Brenneman v. Auto-Teria, Inc.*, 260 Or. 513, 491 P. 2d 992; *Smith Development Corp. v. Bilow Enterprises, Inc.*, ____ R. I. ____, 308 A. 2d 477; *Mechanical Wholesale, Inc. v. Universal-Rundle Corp.*, 432 F. 2d 228 [5th Cir. 1970].) As to evidentiary matters a court should approach each case in an individual and pragmatic manner, and require the claimant furnish the best available proof as to the amount of loss that the particular situation admits. (McCormick, Law of Damages, § 29 [1935].) It is the responsibility of a district court to see that speculative and probproblematical evidence does not reach the jury. (*Peterson v. Bachar*, supra.)

Strict application of the certainty doctrine would place a new business at a substantial disadvantage. To hold recovery is precluded as a matter of law merely because a business is newly established would encourage those contracting with such a business to breach their contracts. The law is not so deficient. (*Hoge v. Norton*, supra.)

Certainly the televising of conference basketball games and the selling of advertising in connection therewith is not a new or untried business. There are techniques available in the advertising and television business by which profits can be calculated with reasonable certainty to justify a contractual relationship.

It might well take two or three years to build such an enterprise into a profitable business. It would be manifestly unjust to permit a breach of a contract covering such a business after two or three

years promotional operation and thus permit the contractor to take advantage of the promotion without liability because the particular operator could not show a profit during the promotional period.

We conclude the district court erroneously restricted the evidence of plaintiff to past business experience for the purpose of showing loss of profits, and erroneously directed a verdict for defendants because the business in question did not reflect an overall profit during the promotional period.

The judgment is reversed with directions to grant a new trial.