57 F.3d 1078
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 E. David ROSENBERG and Air Masters, S.W., Inc., Plaintiff-Appellee,
v.
SEARS, ROEBUCK AND CO., Defendant-Appellant.
 No. 93-16061.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 15, 1994.
Decided June 5, 1995.
 
 Before: TANG, REINHARDT, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Sears, Roebuck and Co. ("Sears") appeals the amount of damages awarded to E. David Rosenberg ("Rosenberg") after a bench trial on Rosenberg's breach of contract claim. On appeal, Sears argues that the award of lost profits was clearly erroneous because it was unsupported by the evidence. In addition, Sears maintains that the district court erred in awarding, in addition to lost profits, the funds that Rosenberg invested in his business. Jurisdiction was based on diversity. We have jurisdiction under 28 U.S.C. Sec. 1291, and affirm.
 
 I.
 
 3
 Rosenberg is in the heating, ventilation and air conditioning ("HVAC") business. Before he did business in Arizona, he was part owner of Central Air, another HVAC business that provided sales and installation services to Dayton-Hudson customers in the Minneapolis-St. Paul area.
 
 
 4
 In 1985, Sears became interested in Rosenberg's proposal to start an HVAC installation business, in which Rosenberg would install and service HVAC units sold by eight Sears stores in Arizona. In December 1985, Rosenberg moved to Phoenix to begin his new business, Air Masters. Rosenberg began receiving orders from Sears in February 1986. On March 7, 1986, the parties entered into a written contract.
 
 
 5
 Six months later, in October 1986, Sears terminated its contract with Rosenberg, even though Air Masters had increased Sears' HVAC sales volume dramatically over its six months of operation. Rosenberg brought suit against Sears for breach of contract. The district court found in favor of Rosenberg. Sears does not contest liability on appeal.
 
 
 6
 The district court awarded Rosenberg $589,968: $456,968 in lost profits that would have been earned had the contract not been terminated by Sears, and $133,000 to compensate Rosenberg for his out-of-pocket expenses.
 
 II.
 
 7
 The district court's award of lost profits is factual in nature and is reviewed for clear error. F.R.Civ.P. 52(a). Lost profits for a new business are awardable if they can be proven with reasonable certainty. Rancho Pescado v. Northwestern Mut. Life Ins., 680 P.2d 1235, 1245-46 (Ariz. App. 1984). "[O]nce the fact of damages has been shown, the amount of damages may be shown with proof of a lesser degree of certainty than is required to establish the fact of damage." Id. at 1245; Short v. Riley, 724 P.2d 1252, 1254 (Ariz. App. 1986).
 
 
 8
 The district court awarded Rosenberg lost profits based on the most conservative estimate of Rosenberg's expert witness, Thomas Gay, C.P.A. Gay testified that Air Masters' profits should be calculated over a 5-year period and that they would be equal to 2.7% of Sears' HVAC sales. he derived the 2.7% profit estimate by dividing Air Masters' profits, as shown on its financial statements, by Sears' total sales from March through September 1986. The profit estimate was corroborated by comparison with Central Air's profit figure, as well as those of a trade almanac. Gay then multiplied the 2.7% profit figure by Sears' five-year forecasted sales in the eight stores serviced by Air Masters.[1]
 
 
 9
 Gay's calculations of Air Masters' potential profit over a five-year period were reasonably certain and supported by the evidence. Nonetheless, Sears asserts that Gay's use of Sears' revenue figure either was based on ignorance of the nature of Air Masters' business or was unreliable because Gay completely misunderstood the actual amount of Air Masters' revenues. Sears' arguments are unavailing. Gay's estimate did not depend on whether Air Masters sold or installed HVAC equipment, nor did it depend on Air Masters' gross revenues. The estimate was derived from calculations of how much Air Masters would net in relation to Sears' overall sales and was based on Air Masters' actual financial performance as demonstrated by its financial statements, as well as sales figures supplied by Sears.[2]
 
 
 10
 Gay derived the 2.7% profit figure from a determination that for its first six months of operation, Air Masters made a total profit equal to approximately 2.7% of Sears' sales revenues for that same period.[3] The 2.7% profit figure was corroborated by Central Air's profit figure, in which Central Air's profits represented 2.8% of Dayton-Hudson's HVAC sales.[4] Gay also checked a trade almanac to ensure that the 2.7% profit figure was not unduly high. The profit figure was remarkably low in comparison with similar businesses in the HVAC industry.[5]
 
 
 11
 Sears also argues that Rosenberg's damages should not have been measured over five years, maintaining that the forecast of such a long-term relationship between Rosenberg and Sears was insupportable. We disagree. Gay's five-year forecast period was reasonable and supported by the facts that Sears' management confirmed Sears' desire for long-term relationships with "furnish and install" contractors, that Rosenberg had achieved early success in increasing Sears' HVAC sales, and that Sears' had invited Rosenberg to expand his business to Los Angeles. See RT 1/4/95 at 15-18, 125-26, 146. As the district court noted, Sears represented to Rosenberg that Air Masters' contract would not be terminated unless Air Masters failed to improve Sears' HVAC sales. Air Masters' performance over the six-month period of operation was exceptional, so it was reasonable for Gay to estimate a five-year Air Masters-Sears relationship.
 
 
 12
 Sears' argument that Gay erroneously assumed that Air Masters would receive 100% of Sears' installation jobs over the five-year period is also unavailing. Gay based his damages figure on the sales projections of the eight stores Air Masters was already servicing. Air Masters was the sole contractor for those stores, and there was no evidence introduced to show that this situation would not continue.
 
 
 13
 Finally, Sears contends that lost profits should not have been awarded because Air Masters operated at a loss once officer and employee compensation was subtracted from the $18,000 net profit. We disagree. Even if Air Masters operated at a loss during its six months in existence, the facts show that the new business was likely to turn a profit in the future. For example , HVAC sales for the 23 stores in Sears' Southwest Group had been $120,000 in 1985. From March 1986 to October 1986, while Air Masters served as Sears' HVAC contractor for only 8 stores, HVAC sales increased dramatically to $708,868. See RT 1/4/93 at 142. The district court observed,
 
 
 14
 The Sears Southwest group ranked 26[th] of 26 national groups for HVAC sales in 1985, the year before Airmasters entered its agreement with Sears. In 1986, while plaintiffs served only eight of the 23 stores in Sears Southwest group, the group experienced a significant increase in HVAC sales volume during the period March 7 - October 31, 1986 and moved the air conditioning volume for the Southwest group from 26th to 1st in growth percentage. Rosenberg's success prompted Sears management to offer him the opportunity to expand his services to an additional fifteen stores in the Southwest Region, as well as to the Los Angeles area.
 
 
 15
 In fact, Rosenberg received an award from Sears for showing the largest sales increases percentage of any Sears HVAC "furnish and install" vendor in the United States. The likely long-term success of Air Masters is also demonstrated by Rosenberg's success with Central Air. Thus, even if Air Masters operated at a loss during its first six months, the evidence shows that it would undoubtedly have operated at a substantial profit if the Air Masters-Sears relationship had continued. We will not deny meaningful recovery for lack of a sufficient 'track record' where the plaintiff has been prevented from establishing such a record by the defendant's actions." Rancho Pescado, 680 P.2d at 1245 (quoting Chung v. Kaonohi Center Co., 618 P.2d 283, 293 (Ha. 1980); see also Vickers v. Wichita State University, Wichita, 518 P.2d 512, 517 (Kan. 1974) (observing that it would be "manifestly unjust" to deny recovery to plaintiff after plaintiff's business benefited defendant, merely because plaintiff could not show a profit).
 
 
 16
 Gay derived the 2.7% profit figure from the financial statements of Air Masters over its six-month existence, as well as from Sears' sales figures. His comparison of this figure with the Central Air profit figure and the figures from Troy's Almanac corroborated Gay's estimate. Furthermore, even if Air Masters operated at a loss during its first six months, evidence of Rosenberg's success with both Sears and Central Air provides reasonable certainty that Air Masters would have turned a profit if Sears had not breached the furnish and install contract. We do not find the district court's award of lost profits to be clearly erroneous.
 
 III.
 
 17
 We also affirm the $133,000 award for out-of-pocket expenses. Sears was on notice that Rosenberg was seeking both lost profits and out-of-pocket expenses and failed to raise the duplicate damages issue at trial. Consequently, Sears has waived its duplicate damages argument. The district court did not abuse its discretion in refusing to consider Sears' duplicate damages claim. See, e.g., American Home Assur. v. Glenn Estess and Associates, 763 F.2d 1237 (11th Cir. 1985).
 
 
 18
 AFFIRMED.
 
 
 19
 RYMER, Circuit Judge, concurring in part and dissenting in part:
 
 
 20
 I would not dissent were the only trouble with Rosenberg's evidence of lost profits his expert's testimony that Air Masters had revenues of $709,000 whereas both its 1986 tax return and Rosenberg's cash ledger showed revenues of $182,000. Or that he thought Air Masters sold and installed HVAC equipment, whereas in fact Sears made all the sales (generating $709,000 in revenue) and Air Masters did the installing (generating $182,000 in revenue). Or that the "corroborating" profit margin of Central Air in fact differed by a factor of four from the expert's numbers for Air Master once the Air Master numbers are adjusted for the undisputed revenue error. Or perhaps even that he choose for purposes of comparison the one tax year out of six when Rosenberg's tax return, which included Central Air, didn't show a loss.
 
 
 21
 But I am firmly convinced that all of these things, together with projecting a stream of profits based on Air Masters's first six months operation without any allocation for officers' services or employees' salaries, make the expert's analysis so fundamentally flawed that the award for lost profits cannot stand. During Air Master's first six months of operation, Rosenberg took neither a salary nor a draw, and other managers received reimbursement for expenses only. Yet Gay assumed that the $18,000 Air Masters made in 1986 was profit. This "profit," in turn, formed the basis for the expert's opinion that Rosenberg's start-up company would go forward on a 2.7 percent profit margin and for extrapolating the amount of profits that the company lost as a result of Sears's breach of contract. However, if Rosenberg had paid himself and the managerial staff, who also were unpaid, anything more than $18,000 for the year, Air Masters would have had no profit.
 
 
 22
 Gay's calculation of lost profits is therefore fatally deficient. It made no allowance for compensation or the reasonable value of Rosenberg's services, which is required to avoid artificially inflating earnings and the projection of profits based on them, see e.g., Pitchford v. PEPI, Inc., 531 F.2d 92 (3rd Cir.) (vacating damage award and remanding for new trial because salary of 99% owner of closely held corporation should have been treated as cost of operation in data employed to project potential earnings for purpose of evaluating lost going concern value), cert. denied, 426 U.S. 935 (1976); Ad-Vantage Telephone Directory v. GTE Directories Corp., 849 F.2d 1336 (11th Cir. 1987) (overturning lost profits award because plaintiff's damage study did not take into account any salary for manager/sole shareholder); see also Dombey v. Phoenix Newspapers, Inc., 708 P.2d 742 (Ariz. App. 1985) (rejecting damage study that failed to take account of overhead, including owners' salaries, in calculating lost profits); and it was otherwise based on comparisons and data which lack any reasonable degree of certainty and competence. Accordingly, I would reverse and remand for retrial on this issue.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Gay derived a forecasted sales figure by multiplying $2,033 (the estimated cost per HVAC unit) by the number of HVAC unit sales from customers who needed to replace their HVAC units, as well as customers who made up Sears' 2.5% share of the HVAC market
 
 
 [2]
 Although Gay did not rely on Rosenberg's corporate tax returns, which covered both of Rosenberg's businesses, Central Alarm Systems and Air Masters, his study of Air Masters' financial statements was sufficient to support his profit figure calculations. The financial statements itemized Air Masters' revenues and expenses while it was in operation. As Gay explained,
 If the accounting information is purported to be more representative of the activities of the business enterprise, it certainly has a larger weight than the tax returns.
 RT 1/5/93 at 55:2-9.
 
 
 [3]
 Application of the 2.7% figure demonstrates its reasonableness as a lost profits figure. Sears' total sales for the six-month period was approximately $700,000. If that figure is multiplied by 2.7%, the resulting figure is $18,900. Air Masters' financial statements show that Air Masters' net income at the end of the six-month period was a little over $18,000
 
 
 [4]
 Sears' asserts that comparing Air Masters to Central Air is inappropriate because the businesses differed. However, the fact that Central Air sold HVAC equipment, while Air Masters only furnished and installed HVAC equipment, or that Central Air provided mostly heaters, while Air Masters provided mostly air conditioning is irrelevant to an inquiry into Rosenberg's abilities to train sales personnel, his knowledge of HVAC mechanisms, and his marketing skills. Thus, contrary to Sears' assertions, Central Air could validly be used as a basis of comparison
 
 
 [5]
 At this point, we note that Gay did not rely on either of these sources for his derivation of the 2.7% profit figure. He used them merely as points of comparison. Thus, Sears' attempts to distinguish Central Air from Air Masters and to cast doubt on Gay's use of the trade almanac are unavailing