**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 22, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

THE BEVILL COMPANY, INC.,

Plaintiff-Appellant,

v.

SPRINT/UNITED MANAGEMENT
COMPANY,

Defendant-Appellee.

No. 08-3063
(D.C. No. 2:01-CV-02524-CM)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

This breach of contract case is before us for the third time. The Bevill

Company, Inc. (Bevill) now appeals from (1) the district court's decision, entered

after a bench trial, that Sprint/United Management Company (Sprint) properly

terminated the contract with Bevill both for convenience and for cause and Bevill

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

failed to prove any damages and (2) the district court's order granting Sprint's motion for partial summary judgment to strike Bevill's request for a jury trial because Bevill had waived its right to a jury trial in its contract with Sprint. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## FACTS AND PROCEDURAL HISTORY

On August 1, 2000, Bevill and Sprint entered into a Master Services Agreement (MSA) and a Contract Order as a single agreement. Robert Bevill negotiated the agreement on behalf of Bevill. The agreement provided that Bevill would provide dial-up internet access services to soldiers living in the barracks of military bases where Sprint provided telecommunications services pursuant to a separate contract with the Army and Air Force Exchange Services (AAFES). The agreement included Bevill's projection that it would provide dial-up internet access to 20% of the base populations within one year of beginning service.[1]

Bevill was to provide dial-up access for a three-month trial period to four military bases to evaluate profitability and viability of the program before providing service to all bases. After Bevill provided this service for three full months at all four bases, the parties were to meet to review the program performance statistics and future direction of the program. If the parties determined

---

[1]     Although Mr. Bevill testified that 20% represented a maximum, the district court found this testimony not credible.

that program penetration levels and profitability goals have been reasonably met, Sprint will issue formal written acceptance of the program test period. At that time, Sprint will also issue formal authorization to proceed with a build-out of the remaining base locations which have been determined to be viable. If it is agreed by the parties that all stated program goals have been reasonably met, this formal authorization to proceed cannot be unreasonably withheld by Sprint.

Aplt. App., Vol. I at 71. But, if upon their review, the parties determined

that the program has not achieved its stated goals, the representatives of the parties will work together to develop a formal, written cure plan detailing the steps that will be taken by all parties to effect the necessary changes to bring the program into compliance. *If the parties are unable, after all due effort, to reach agreement on the cure plan or the future direction of the program, Sprint reserves the right to unilaterally terminate the program under section 4 of this agreement.*

*Id.* (emphasis added).

On October 3, 2001, the parties' representatives met to discuss whether the dial-up internet sales could be profitable based on the results of the test period. During the meeting, Sprint's representatives expressed concern that there were not enough subscribers and no showing of sufficient profitability and stated that Sprint expected Bevill to have subscribers totaling 5% of the base population, which was one quarter of the 20% figure projected by the agreement, or 533 subscriptions for the trial period. Mr. Bevill stated that this would be difficult to achieve. One Sprint representative, D.J. McDyre, told Mr. Bevill that Bevill must have at least 400 subscribers for Sprint to move forward and end the trial period. That number was based on Mr. Bevill's representation that he needed 100

-3-

subscribers per base to break even. Sprint extended the trial period for ninety days so that Bevill could reach this goal.

In a later communication with Mr. McDyre, Mr. Bevill suggested a trial period goal of 283 subscribers, which was 5% of Sprint's telephone customers. Sprint refused to accept this. Bevill and Sprint could not agree on the subscriber levels needed for the program to proceed. On October 15, 2001, Mr. Bevill sent an email message to the AAFES complaining about the subscriber goal established by Sprint.

On October 23, 2001, Sprint sent Bevill a letter terminating the contract for convenience pursuant to MSA § 4.2. Section 4.2, titled "Termination for Convenience," provides that "Sprint may terminate this Agreement or any Contract Order(s) or both at any time without liability by providing a termination notice to [Bevill]. Unless otherwise provided in the notice, the termination is effective 10 days after the date of the notice." *Id.* at 42.

On November 2, 2001, before the effective date of the termination, Bevill filed its complaint asserting that Sprint had no cause to terminate the agreement. Bevill sought an injunction to prevent termination of the contract unless Sprint showed cause or, if termination occurred, an award of compensatory damages and lost profits.

In November 2001, Sprint agreed to reconsider its termination for convenience. It requested that Bevill provide Sprint with a business plan and

other financial information. Sprint again requested a revenue report that had been requested on October 3, but never received. On December 3, 2001, Bevill provided Sprint with the report along with an email note indicating that Bevill had set up an escrow account for commissions. Also during December, Bevill provided Sprint with a bank statement showing a zero balance as of October 31, 2001; a bank statement from another company of Mr. Bevill's, World Wide OnLine, indicating that credit card payments for the agreement had been deposited in that account; deposit slips for the World Wide OnLine account reflecting payments from individual soldiers; Bevill's business plan showing assets of $81; and financial information indicating that Bevill had $33,000 in cash as of December 17. Based on this information, Sprint concluded that Bevill was commingling money from the agreement with money in other accounts. Additionally, Bevill never paid Sprint or AAFES any commissions because there was no money available in the Bevill account to do so, and Bevill never actually set up an escrow account. Also, Sprint received notice in December that some of Bevill's equipment was being repossessed.

Mr. Bevill and his attorney met with Sprint representatives on December 28, 2001, to further discuss whether the termination for convenience should be reconsidered. Again, the parties were unable to reach agreement on the subscriber goals or future direction of the program.

On January 21, 2002, Sprint sent Bevill another letter confirming that it would not change its decision to terminate for convenience. Although the letter noted that no reasons were required to terminate for convenience, it pointed to the commingling of Bevill funds with Mr. Bevill's personal funds and with the funds of other business interests, Bevill's failure to pay bills resulting in repossession of equipment used to perform under the agreement, and the lack of a reasonable and attainable business plan showing a likelihood that Bevill could achieve profitability.

After Mr. Bevill's second deposition, Sprint sent Bevill a letter dated March 13, 2002, terminating the agreement for cause pursuant to MSA § 4.3 as a back-up to the termination for convenience. Section 4.3 permits termination for cause

> [i]f a party believes the other party has materially breached this Agreement or a Contract Order or both, that party may give the other party a material breach notice, identifying the action or inaction that is the basis of the breach. The party that gave the breach notice may terminate this Agreement or the affected Contract Order or both if the breaching party has not cured the breach within 30 days after the date of the breach notice. Unless otherwise provided in the notice or unless the breach has been cured, the termination is effective 31 days after the date of the notice.

*Id.* The letter terminating for cause noted, among other things, the following material breaches: Bevill's failure to account for or pay commissions, allowing commission money to be held by a business entity with no legal right to receive or hold the money, failure to maintain accounting records in accordance with

-6-

generally accepted accounting principles, and commingling of funds with other entities. Bevill did not respond to the termination-for-cause letter.

On April 4, 2002, the district court granted Sprint's motion for summary judgment on the complaint, deciding that under the terms of the contract Sprint was permitted to terminate the contract for convenience without breach. On April 30, 2002, Bevill ceased business operations.

Thereafter, Bevill appealed the district court's summary-judgment order. We, however, remanded to the district court to determine whether Bevill "ha[d] standing to challenge/enforce the terms of the contract." *Bevill Co. v. Sprint/United Mgmt. Co.*, 77 F. App'x 461, 462, 464 (10th Cir. 2003) (recognizing the agreement was executed by Bevill, a Delaware company, but the breach of contract action was filed by Bevill, a New Hampshire company not in existence when the agreement was executed). After deciding that Bevill did have standing, the district court granted summary judgment to Sprint, again holding that under the terms of the contract, Sprint could terminate at its convenience. On appeal, we determined that the contract was ambiguous whether Sprint could terminate for convenience without first making "all due effort" to reach an agreement with Bevill for a "cure plan or the future direction of the program," and we therefore remanded for further proceedings to resolve the ambiguity. *Bevill Co. v. Sprint/United Mgmt. Co.*, 154 F. App'x 49, 49, 51-52 (10th Cir. 2005).

Upon remand, the district court held a bench trial, after determining Bevill knowingly and voluntarily waived a jury trial in the agreement. After trial, the district court considered the parties' post-trial briefing and additional evidence not presented at trial, issued findings of fact and conclusions of law under Fed. R. Civ. P. 52(a), and concluded for several alternative reasons that Bevill was not entitled to recover on its breach-of-contract claim.

First, the court determined that "Bevill's only claimed damages–lost profits–were not caused by the claimed breach of contract–Sprint's attempt to terminate the contract for convenience." Aplee. App., Vol. III at 628.

> Sprint's mere *attempt* to terminate the Contract does not give rise to an action for lost profits allegedly sustained because the contract was terminated. The causal connection is missing. Even assuming that Sprint breached the contract by giving Bevill notice of termination for convenience without first giving all due effort to reach an agreement on a cure plan or the future direction of the program, Bevill failed to show that if Sprint had given "all due effort," the parties could have reached an agreement that would have resulted in the lost profits that Bevill claims. Bevill's performance and ability to generate profits was only affected (if at all) upon *actual* termination of the contract. Because Bevill failed to show damages caused by Sprint's alleged breach, Bevill is not entitled to relief.

*Id.* (citation omitted).

Additionally, the court concluded that Sprint properly terminated for convenience, because Sprint complied with the contract requirements and used "all due effort" to agree on a cure plan or future direction of the program, but there was no possibility for an agreement. Because the parties could not agree on

subscriber goals for the three-month trial period, the court therefore decided the parties could not develop a cure plan. More specifically, the court found that through the meetings and informal communications, Sprint attempted to comply with the requirement that the parties work together on a formal, written cure plan, but a cure plan could not be achieved until the parties agreed on the subscriber goals for the program. The court also found that Mr. Bevill's modification of his projection that he could reach 20% of the base population within a year to a much lower number was unreasonable and was the reason the parties were unable to reach agreement on the subscriber goals. Also, the court rejected Bevill's argument that Sprint did not act in good faith by insisting Bevill sell dial-up to soldiers without telephone service, because reaching 5% or 20% of a base population would not require Bevill to sell to soldiers who did not have Sprint telephone service.

Next, the district court concluded that Sprint properly terminated the contract for cause due to Bevill's material breaches of the contract. In particular, the court found that Bevill materially breached the contract by commingling funds, by transferring agreement money to Mr. Bevill and other entities, by failing to pay commissions, by making false statements regarding an escrow account and money in the account, and by providing false financial statements. In addition to finding the breaches to be material, the court also found that Sprint considered the breaches to be material. Further, the court found that Bevill never

attempted to cure these defaults, but if it had, the dishonesty of providing false statements and financial information could not reasonably be cured and the failure to pay commissions could not be cured because the Bevill account had no money.

Finally, the court concluded that Bevill did not show that it would have made any profit if the contract, which was only for dial-up services, had remained in effect. Although the court took into account the fact that Bevill was a start-up company, the court did not rely on Bevill's historical failure to make a profit. Instead, the court concluded Bevill failed to prove damages based on the evidence at trial of Bevill's business practices, the terms of the agreement, and the viability of dial-up internet access in light of the soldiers' preference for high-speed internet access.

## ANALYSIS

As indicated above, following the bench trial, the district court made findings of fact and conclusions of law. The court's "[f]indings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and [we] must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6). "A finding of fact is not clearly erroneous unless it is without factual support in the record, or unless the court after reviewing all the evidence, is left with a definite and firm conviction that the district court erred." *United States v. Jarvison*, 409 F.3d 1221, 1224 (10th Cir. 2005) (quotation marks omitted).

-10-

We review the district court's conclusions of law de novo. *State Ins. Fund v. Ace Transp. Inc.*, 195 F.3d 561, 564 (10th Cir. 1999). In doing so, we "apply[] the same standard that the trial court would apply in making its initial ruling." *Id.*

I.

Bevill argues that the district court erred as a matter of law by applying an incorrect legal standard to determine that Bevill, as a start-up company, cannot show lost profits. Bevill maintains that Kansas law[2] holds that start-up companies can show lost profits, but the district court improperly applied the wrong legal standard when it relied on *Olathe Manufacturing, Inc. v. Browning Manufacturing*, 915 P.2d 86, 103-06 (Kan. 1996), which decided that the expert testimony concerning lost profits was speculative and unreliable. *Olathe Manufacturing*, however, cites *Vickers v. Wichita State University*, 518 P.2d 512 (Kan. 1974), the very case Bevill now asserts provides the correct legal standard. *See Olathe Mfg.*, 915 P.2d at 103-04 (discussing and quoting from *Vickers* and noting that it "is the key Kansas case in the area of lost profits"). Both cases require a plaintiff to prove lost profits with reasonable certainty based on the facts of the individual case. *Id.* at 103-06; *Vickers*, 518 P.2d at 515-17. And *Olathe Manufacturing* specifically relied on *Vickers* in holding that certain expert testimony was speculative. *Olathe Mfg.*, 915 P.2d at 106. Thus, the two cases do not present different standards. Based on our de novo review, we conclude that

---

[2] The agreement provides, and the parties agree, that Kansas law applies.

the district court applied correct legal standards. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991) (concluding a court of appeals must review a district court's determination of state law de novo).

Furthermore, contrary to Bevill's assertion, the district court did not decide that a start-up company can never recover lost profits; rather, the court decided that Bevill was required to show lost profits with some reasonable certainty. The court took "into account the fact that Bevill was a start up company, and accordingly [did] not rel[y] solely on Bevill's historical failure to make a profit." Aplt. App., Vol. III at 630.[3]

## II.

Bevill argues that the district court erred in failing to follow our directive in *Bevill*, 154 F. App'x at 49, 51-52, to resolve the ambiguity between the MSA and the Contract Order and instead treated the directive as dicta. There, however, was no need for the district court to resolve the ambiguity, because the court decided that Sprint needed to use "all due effort." Under the circumstances, we decline to conclude that our mandate precluded the district court from proceeding

---

[3] We note that Bevill does not challenge the district court's findings regarding its failure to establish damages. The court found that Bevill did not show that it was capable of making a profit under the agreement and that Bevill's financial practices showed a lack of attention to detail, such that it would not become profitable. Additionally, the court found that Bevill could not make a profit comparable to the profit Sprint was making providing DSL internet access, because the agreement was only for dial-up access, which was losing popularity. In other words, Sprint's income from selling DSL access did not show the income Bevill would make if Sprint had not terminated the contract.

as it did. *Cf. Proctor & Gamble Co. v. Haugen*, 317 F.3d 1121, 1126 (10th Cir. 2003) ("Although a district court is bound to follow the mandate, and the mandate controls all matters within its scope, . . . a district court on remand is free to pass upon any issue which was not expressly or impliedly disposed of on appeal." (quotation marks omitted)).

## III.

Bevill argues that the district court erred in deciding that Sprint properly terminated the agreement for convenience because Sprint did not exercise "all due effort" to reach an agreement with Bevill and Sprint's failure to do so was a breach of the contract. According to Bevill, the district court failed to provide the subsidiary facts necessary for us to review the steps the court took to conclude that Sprint used "all due effort" before terminating for convenience. Further, Bevill contends that Sprint's assertion that the parties could not reach an agreement regarding the subscription level was based on the fact that Sprint set an impossible goal that Bevill sell dial-up internet services to soldiers without Sprint telephone service and that Sprint denied Bevill the ability to offer DSL internet access.

Sprint first counters that we should decline to review this issue because Bevill failed to provide record citations to support its arguments and cited in its opening brief to only its statement of the facts in its post-trial brief. Also, the

majority of the record cites in Bevill's reply brief are not included in the parties' appendices.[4]

An appellant has a responsibility to provide an adequate appendix for appellate review. *See* 10th Cir. R. 10.2(B), 30.1(A)(1); *United States v. Dago*, 441 F.3d 1238, 1251 (10th Cir. 2006). "The appellant must provide all portions of the transcript necessary to give the court a complete and accurate record of proceedings related to the issues on appeal." 10th Cir. R. 10.1(A)(1). An appellant, however, cannot fulfill its obligation to provide record support by merely citing to its statement of facts in a district court brief to show that the district court's factual findings were clearly erroneous. *Cf. Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006) (noting that appellant's citation to its statement of undisputed facts in a summary judgment motion does not fulfill the mandate of Fed. R. App. P. 28(e) that citations be to the appendix). Also, citation references should be to the appendices, and not to the transcripts. *See* 10th Cir. R. 28.1(A). And transcript excerpts must be included in an appendix when referred to in a brief. *See id.* at 10.3(D)(4).

---

[4] In its reply brief, Bevill contends that Sprint has "unreasonably and vexatiously increas[ed] litigation costs by including unnecessary material in the appendix." Fed. R. App. P. 30(b)(2). According to Bevill, the majority of Sprint's appendix is available in the record and referenced in the two prior appeals. We disagree. Each appeals stands on its own. Our rules do not relieve the parties from providing an adequate appendix in subsequent appeals.

-14-

Because Bevill did not provide a sufficient appendix, we could decline to consider this issue. *See* 10th Cir. R. 10.3(B); *see also United States S.E.C. v. Maxxon, Inc.*, 465 F.3d 1174, 1175 n.1 (10th Cir. 2006) (deciding that appellants who fail to provide a record sufficient for appellate review risk summary dismissal of their claims). But since Sprint has provided a sufficient appendix to affirm the district court, we proceed to consider this issue on its merits.

In reviewing on the merits, however, we will "not sift through [Sprint's] appendix to find support for" Bevill's arguments. *Phillips v. James*, 422 F.3d 1075, 1081 (10th Cir. 2005). Nor will we consider factual statements or assertions made by Bevill in its briefs that are supported by citation to transcript or deposition pages not included in the appendices or by citations to its statement of the facts in its post-trial brief. Instead, we will decide this appeal only on the portions of the record provided in the appendices. We remind counsel of the importance of following court rules to aid our consideration of appeals, as "[t]hese rules are not empty gestures." *Travelers Indem. Co. v. Accurate Autobody, Inc.*, 340 F.3d 1118, 1121 (10th Cir. 2003).

We now proceed to the merits of this issue. The district court found that Sprint terminated for convenience after making "all due effort" to develop a cure plan. Bevill contends that the court reached this conclusion without providing the subsidiary facts necessary to allow us to determine the steps the court took to reach its decision. *See Roberts v. Metro. Life Ins. Co.*, 808 F.2d 1387, 1390 (10th

Cir. 1987) (requiring a district court to make findings sufficient to indicate the factual basis for the court's ultimate conclusion). This, however, is not a case where the district court made conclusory findings unsupported by the subsidiary facts or explanatory reasoning. *See id.* at 1390-91. The district court's factual findings, summarized in this order and judgment, are sufficiently detailed to enable us to determine whether the findings are clearly erroneous. *See id.* at 1391. Upon careful review of the appendices, we conclude that the findings are not clearly erroneous. Because Sprint used "all due effort" to reach an agreement with Bevill concerning subscriber goals, but no agreement was reached, Sprint properly terminated for convenience. Accordingly, we affirm for substantially the same reasons set forth by the district court in its memorandum and order of February 5, 2008. Aplee. App., Vol. III at 617.

## IV.

Bevill argues that the district court erred in deciding that Sprint properly terminated for cause. Because we affirm the district court's determination that Sprint properly terminated for convenience, we need not address this issue.

## V.

Bevill's next issue concerns the district court's summary-judgment decision to deny a jury trial. Sprint filed a motion for partial summary judgment to strike Bevill's jury-demand request, claiming only that Bevill waived its right to a jury trial in MSA § 16.4. The district court found that Bevill knowingly accepted the

-16-

jury waiver. But because the court could not determine the relative bargaining positions of the parties or other facts about the parties and their negotiations, the court could not determine if Bevill's waiver was voluntary. Accordingly, the court denied Sprint's motion for summary judgment without prejudice.

Sprint later renewed its motion, presenting evidence that the waiver was voluntary. The district court agreed, finding that Mr. Bevill negotiated the contract with Sprint over the course of seven months, he drafted entirely or almost entirely twelve of the thirty-six pages of the Contract Order, he has a college education and has done post-graduate work, he has business experience as an independent contractor, he set up Bevill specifically to enter into the agreement with Sprint, he funded the business with his own money and loans from friends, he consulted with an attorney before signing the agreement, and he negotiated language in the Contract Order to negate certain unfavorable language in the MSA but did not attempt to negate the jury waiver in the MSA. Correctly applying federal law to this jury-trial waiver issue, the court determined Mr. Bevill was able to bargain successfully with respect to many aspects of the contract, and therefore there was no "gross disparity" in bargaining power. *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 837 (10th Cir. 1988). Although the court recognized that Mr. Bevill may have been at a disadvantage from a bargaining standpoint, the court was unwilling to hold that the disadvantage caused Bevill's acceptance of the jury waiver to be involuntary.

-17-

Bevill argues that the district court erred in granting Sprint's renewed motion for partial summary judgment since there was no significant change in the facts regarding Mr. Bevill's level of sophistication and business experience from the first motion. Bevill instead contends that the parties had grossly disproportionate bargaining power and Mr. Bevill was a systems engineer, not a sophisticated businessman, whereas Sprint is a large corporation.

> We review a district court's decision to grant summary judgment de novo, viewing all facts in the light most favorable to the party opposing summary judgment. We will affirm a grant of summary judgment if there is no genuine issue of material fact and the prevailing party is entitled to judgment under the law.

*Grynberg v. Total, S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) (citation omitted).

Applying these standards, we conclude that the district court correctly granted Sprint's summary-judgment motion. Contrary to Bevill's assertion, the first motion contained no evidence about Mr. Bevill's level of sophistication or business experience. Also contrary to Bevill's assertion, the evidence does not show grossly disproportionate bargaining power. Accordingly, we affirm for substantially the same reasons set forth by the district court in its memorandum and order of April 30, 2007. Aplt. Opening Br., Tab C.

VI.

Lastly, Bevill requests an award of costs and attorney's fees against Sprint if this case is remanded to the district court again. In light of our affirmance of the district court's decision, this request is moot.

CONCLUSION

The judgment of the district court is AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge